**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **REALTIME DATA, LLC,** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | **CIVIL ACTION NO. 6:16-CV-00961** |
| | § | **RWS-JDL** |
| | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **RACKSPACE US, INC., NETAPP, INC.,** | § | |
| **and SOLIDFIRE, INC.,** | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants NetApp, Inc. ("NetApp") and SolidFire, LLC's ("SolidFire") Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404, or in the alternative, Sever and Transfer the Claims Against NetApp and SolidFire to the Northern District of California. (Doc. No. 54.) On page five of their Motion, NetApp and SolidFire indicate that "[i]n light of its contacts with California, Rackspace does not oppose this entire action being transferred to the Northern District of California." (*Id.* at 5.) Plaintiff Realtime Data LLC ("Realtime") has filed an Opposition (Doc. No. 80), NetApp and SolidFire have filed a Reply (Doc. No. 82), and Realtime has filed a Sur-Reply (Doc. No. 85).

After consideration of the parties' arguments and for the reasons stated herein, the Court **DENIES** NetApp and SolidFire's Motion in its entirety. (Doc. No. 54.) In addition, the Court **DENIES AS MOOT** NetApp and SolidFire's Motion to Stay the Litigation Pending Resolution of NetApp and SolidFire's Motion to Transfer. (Doc. No. 101.)

## I. BACKGROUND

On June 29, 2016, Realtime sued NetApp, SolidFire, Inc., and Rackspace for patent infringement. (*See* Doc. No. 1.) Realtime had previously filed three other cases in February 2016 against other defendants also alleging infringement of a number of overlapping patents. *See Realtime Data LLC v. Hewlett Packard Enterprise Co.*, No. 6:16-cv-86 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Savvis Comm'ns Corp.*, No. 6:16-cv-87 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Dell, Inc.*, No. 6:16-cv-00089 (E.D. Tex. Feb. 26, 2016). Each of these matters was also assigned to Judge Schroeder and referred to the undersigned.

According to NetApp and SolidFire's Motion, on February 2, 2016, thus prior to the filing of the above-captioned lawsuit, NetApp acquired SolidFire, Inc. (Doc. No. 54, at 2.) According to NetApp and SolidFire, "[t]hat company is now part of NetApp and ceases to exist as an independent entity." (*Id.*) On August 30, 2016, Realtime moved to substitute SolidFire, LLC for SolidFire, Inc. after being informed by NetApp that the originally-named SolidFire entity no longer existed. (*Id.*; *see also* Doc. Nos. 23, 25.) Realtime filed an Amended Complaint against the current Defendants on August 31, 2016 and a Second Amended Complaint against the same parties on October 11, 2016. (Doc. Nos. 24, 33.)

In its Second Amended Complaint, Realtime alleges that Rackspace and NetApp have entered into a "commercial partnership" where "NetApp promotes the use of Rackspace cloud services on its own website" and NetApp identifies Rackspace as an "AltaVault partner". (Doc. No. 33, ¶5.) Realtime further quotes from a "Developer Blog" article on the Rackspace website stating that Rackspace and NetApp "worked together to create a repeatable, approved, and tested process to integrate NetApp storage solutions into Rackspace Private Cloud footprints within a Rackspace datacenter or at the customer's datacenter." (*Id.* at ¶6 (quoting

https://developer.rackspace.com/blog/rpc-and-netapp-hearts-block-storage/).) Realtime notes that NetApp acquired SolidFire, Inc. and further alleges that NetApp markets the product "NetApp SolidFire" on solidfire.com. (*Id.* at ¶7.)

In its Answer, Rackspace "admits that the blogs and websites cited in paragraph 5 [and 6] of the Complaint speak for themselves and otherwise denies all remaining allegations." (Doc. No. 38, ¶¶5-6.) NetApp and SolidFire similarly admit "that the webpages cited in this paragraph contain the quoted statements as of the date of this Answer" and deny all remaining allegations in those paragraphs. (Doc. No. 40, ¶¶5-6.) On November 11, 2016, NetApp and SolidFire filed the instant motion requesting that the Court transfer the entire case to the Northern District of California or alternatively sever NetApp and SolidFire and transfer the claims against them to the Northern District of California. (Doc. No. 54.)

Realtime is a New York limited liability company with its principal place of business located at 116 Croton Lake Road, Katonah, New York 10536. (Doc. No. 33, ¶ 1.) Realtime also maintains offices in Tyler, Texas and Plano, Texas, where Realtime purports to keep substantially all of its documents relevant to this case. (*Id.*; Doc. No. 80-1 ("Tashjian Decl."), ¶ 5.) Realtime asserts that it has one employee located in this District and four relevant witnesses located in the state of New York. (Tashjian Decl., ¶¶7, 9.)

Rackspace is a Delaware corporation with its principal place of business located in Windcrest, Texas, which is located just outside of San Antonio, Texas in the Western District of Texas. (Doc. No. 33, ¶2; Doc. No. 38, ¶2; Doc. No. 54-2 ("Engates Decl."), ¶2.) Rackspace asserts that it "also maintains a facility in San Francisco, California" and that 32 people currently work out of the San Francisco office. (Engates Decl., ¶3.) Realtime has alleged that two of Rackspace's products infringe the asserted patents: Private Cloud and Cloud Backup. Rackspace

states that it understands "Plaintiffs' allegations in this case concerning Rackspace's Private Cloud product to be based solely on Private Cloud's alleged incorporation of features of Defendant NetApp's AltaVault® product. Rackspace has no independent knowledge of the operation of AltaVault and will rely on NetApp's witnesses and evidence in its defense of those allegations." (*Id.* at ¶5.) In a separate declaration, NetApp's Vice President of Advanced Technology notes that "the Amended Complaint accuses Rackspace's Cloud Backup product of infringing all seven Patents-in-suit. NetApp has not provided any technology or features to Rackspace for its Cloud Backup product." (Doc. No. 54-3 ("Dawkins Decl."), ¶9.) Rackspace does not identify the location of its evidence or specify any potential party or non-party witnesses with respect to either its Private Cloud or Cloud Backup products.

NetApp was incorporated in California in 1992, but reincorporated in Delaware on November 1, 2001. (Dawkins Decl., ¶3.) NetApp's principal place of business is located in Sunnyvale, California. (*Id.*) NetApp asserts that three of the four accused NetApp products were developed in the Northern District of California. (*Id.* at ¶¶12-14.) The fourth product, SolidFire®, was developed by SolidFire, Inc. in Boulder, Colorado before it was acquired by NetApp. (*Id.* at ¶15.) NetApp asserts that "[k]ey management, financial, and marketing teams are based in NetApp's Sunnyvale headquarters." (*Id.* at ¶10.) NetApp has identified eight party witnesses, including five technical witnesses in the Northern District of California, one witness in Seattle, and two SolidFire® witnesses in Boulder. (*Id.* at ¶¶12-15.) NetApp states that its "source code relating to the accused NetApp products, including SolidFire and the documents relating to the design, development, testing, marketing and sales of the accused products are maintained on servers located in the Northern District of California." (*Id.* at ¶18.) NetApp further states that "former SolidFire, Inc. employees with knowledge of the SolidFire® product

became NetApp employees after the acquisition. SolidFire, LLC has no employees with knowledge or documents concerning the accused products." (*Id.* at ¶23.)

## II. APPLICABLE LAW

### A. Severance Under F.R.C.P. 21

Rackspace and NetApp do not appear to allege improper joinder with Rackspace under 35 U.S.C. § 299. *See* 35 U.S.C. § 299 ("accused infringer may be joined in one action . . . only if . . . any right to relieve is asserted against the parties jointly, severally, . . . arising out of the same transaction, occurrence or questions of fact common to all defendants . . ."). Instead, the parties focus their alternative severance arguments on the Court's discretionary power to sever a party under Rule 21 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 21. Rule 21 provides that "the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." *Id.* Pursuant to Rule 21, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012) (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)); *see also In re Nintendo Co., Ltd.*, 544 F. App'x 934, 938 (Fed. Cir. Sept. 25, 2013) ("*Nintendo II*").

When faced with circumstances similar to those present in this case, courts have evaluated three factors to determine whether they may exercise their discretion to sever a party: "(1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims." *Cellular Comm'ns Equip. LLC v. HTC*

*Corp.*, Nos. 6:13-cv-507, 6:14-cv-251, 2015 WL 11118110, at *6 (E.D. Tex. Mar. 27, 2015); *Shifferaw v. Emson USA*, No. 2:09-cv-54, 2010 WL 1064380, at *1 (E.D. Tex. March 18, 2010).

In addition, courts may generally rely on their discretionary power to stay a case against a reseller or retailer in situations where an action against a "true defendant" manufacturer has been severed and transferred to another district. *See, e.g.*, *In re Nintendo of America*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) ("*Nintendo III*"); *Shifferaw*, 20010 WL 1064380, at *6.

### B. Transfer Under 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## III. DISCUSSION

### A. NetApp and SolidFire's Alternative Motion to Sever and Transfer the Claims Against Them and Stay Some or All of the Claims Against Rackspace

In approximately one page of argument at the end of the Motion, NetApp[1] argues in the alternative that the Court has "considerable latitude" under Rule 21 to sever the claims against NetApp and SolidFire and transfer only those claims to the Northern District of California. (Doc. No. 54, at 14.) Give the nature of this request, the Court addresses it before considering NetApp's request to transfer the entire case, including the claims against Rackspace, to the Northern District of California.

NetApp asserts that the claims against them can "readily be severed" from the claims against Rackspace. (*Id.*) NetApp first states that there is no connection between NetApp and the Rackspace Cloud Backup product. (*Id.*) With respect to the Rackspace Private Cloud product, NetApp states that Rackspace is accused of patent infringement only "inasmuch as it allegedly incorporates features of the accused NetApp AltaVault product," thus making the claims against Rackspace Private Cloud peripheral. (*Id.* at 15.) NetApp further requests that the claims against Rackspace be stayed if Rackspace remains in this District. (*Id.*) NetApp asserts that "adjudication of the claims against NetApp will dispose of all the claims asserted against both

---

[1] Given that SolidFire is a wholly-owned subsidiary of NetApp and the two parties have jointly filed the currently-pending Motions, the Court will refer to both entities collectively as "NetApp" unless otherwise noted.

NetApp and Rackspace Private Cloud and likely reduce or eliminate any issues regarding Rackspace Cloud Backup." (*Id.*)

In response, Realtime argues that NetApp does not address any of the severance factors in its Motion. Realtime argues that Rackspace is not a mere reseller/retailer because, according to a Rackspace webpage, Rackspace and NetApp "worked together to create a repeatable, approved, and tested process to integrate NetApp storage solutions into Rackspace Private Cloud footprints." (Doc. No. 80, at 5.) Realtime also notes that Rackspace's Cloud Backup product is not related to NetApp and thus "[s]evering this case would create two actions, raising issues of inconsistent orders and inefficiencies involving overlapping issues, discovery, and work." (*Id.*)

In reply, NetApp argues that Realtime is ignoring "(i) NetApp's suggestion that the overlapping claims against Rackspace be stayed . . . and (ii) Rackspace's averment [in its declaration] that it would rely solely on NetApp witnesses and documents for the overlapping claims because it had no involvement in AltaVault." (Doc. No. 82, at 5.) NetApp argues that the fact that judicial resources would need to be expended with respect to the non-overlapping claims would be "insufficient to defeat transfer, as such an exception would swallow the rule." (*Id.*) In sur-reply, Realtime argues that "Defendants should not be permitted to rely on a preemptive 'suggestion' in their transfer motion that the claims against a different party should be stayed." (Doc. No. 85, at 2.) Realtime notes that "[w]hether or not Rackspace has witnesses or documents relevant to the joint product does not change the fact that joinder here is proper, and that severance would result in two separate actions." (*Id.*)

NetApp and SolidFire's alternative Motion to Sever and Transfer arguments, including both case law citations and analysis, are approximately a single page at the end of their fifteen-page transfer motion. NetApp does not walk through an analysis of the severance factors

compared to the facts of the case. Instead, it makes only conclusory assertions that the claims against Rackspace are peripheral and would be resolved by resolution of the claims against NetApp. (Doc. No. 54, at 14-15.) Likewise, NetApp includes a few sentences asserting that the claims against Rackspace should be stayed. (*See id.* at 15.) It is unclear whether NetApp intends that the entire case against Rackspace be stayed, or just the claims against Rackspace with respect to Rackspace's Private Cloud product. Indeed, it is not even clear whether Rackspace joins (or does not oppose) this portion of NetApp and SolidFire's Motion.

Suffice to say, the relationship between Rackspace and NetApp remains entirely unclear. Rackspace *does* submit a declaration of its Chief Technology Officer stating that "Rackspace has no independent knowledge of the operation of AltaVault and will rely on NetApp's witnesses and evidence in its defense of those allegations." (Engates Decl., ¶5.) However, NetApp does not rebut the webpage statements, cited by Realtime in both its Amended Complaint and its Opposition, stating that NetApp and Rackspace "***worked together*** to create a . . . process to integrate NetApp storage solutions into Rackspace Private Cloud footprints." (Doc. No. 80, at 5; Doc. No. 33, ¶6 (emphasis added).) Based on these statements, it is unclear whether Rackspace is a "mere reseller" of the AltaVault technology or is engaged in a more collaborative relationship with NetApp that may be relevant to this litigation. Contrary to NetApp's assertion, Rackspace's vague statement that it lacks "independent knowledge" of AltaVault is not the same as a statement that Rackspace had no involvement in the design of AltaVault with respect to Rackspace's Private Cloud product. Further, while Rackspace states for purposes of this Motion that it will rely on NetApp's witnesses and evidence in its defense of the infringement allegations against Private Cloud, this does not preclude Realtime from seeking relevant testimony and evidence from applicable Rackspace witnesses on these topics. There is also no indication as to

whether NetApp agrees to indemnify Rackspace in this action, either in whole or in part. *See Cellular Comm'ns*, 20015 WL 11118110, at *8. NetApp has not demonstrated that the claims against Rackspace are merely peripheral to the severed claims, nor has it shown that adjudication of the severed claims would potentially dispose of the remaining claims.

Ultimately, the goal of the severance analysis in this context is to determine whether there is a "true defendant" with respect to a particular claim. *Id.*; *see also Nintendo III*, 756 F.3d at 1366. Given the scant information provided by NetApp and Rackspace regarding their relationship, it is not clear that NetApp alone is the "true defendant" under these circumstances. *Id.* Even if NetApp had met its burden with respect to the transfer factors, the shortcomings with respect to the first and second severance factors would make severance inappropriate here. Given the inconsistent evidence and argument presented by the parties, the Court "declines to resolve the factual issues" surrounding the extent of NetApp and Rackspace's relationship with respect to Rackpace's Private Cloud product at this stage in the proceedings. *Cellular Comm'ns*, 2015 WL 11118110, at *8. Ultimately, severance, transfer, and stay fall within the sound discretion of the district court, and it is the movant's burden to show that severance and transfer would be the proper course of action. The Court finds that NetApp and SolidFire have not met that burden here and thus **DENIES** NetApp and SolidFire's alternative motion to sever, transfer the claims against NetApp and SolidFire, and stay (some or all of) the claims against Rackspace.

### B.    NetApp and SolidFire's Motion to Transfer the Entire Case Under § 1404(a)

Realtime does not dispute that venue would be proper in the Northern District of California. The Court thus proceeds to analyze the private and public interest factors under §1404(a).

At the outset, the Court emphasizes that NetApp and SolidFire move for transfer of the *entire case* to the Northern District of California. (*See* Doc. No. 54.) NetApp must show that the Northern District of California is clearly more convenient than this District *for all of the Defendants*. While the relationship between NetApp and Rackspace is unclear, there must be at least some indication that transfer will be an *overall* convenience to the parties, not solely with respect to one of the parties. The fact that Defendants have represented that Rackspace "has no independent knowledge of the operation of AltaVault and will rely on NetApp's witnesses and evidence in its defense of those allegations" still leaves open the question of what evidence and witnesses Rackspace plans to set forth with respect to its Cloud Backup product, with which NetApp purportedly has no involvement. (*See* Engates Decl., ¶5; Dawkins Decl., ¶9.) As discussed below, particularly given the proximity of Rackspace headquarters to this District and the lack of any other information about the location of Rackspace's relevant evidence and witnesses, NetApp has failed to show that the Northern District of California is a "clearly more convenient" venue than this District for all of the parties.

1.     **Private Interest Factors**

a.     *The relative ease of access to sources of proof*

Courts analyze this factor in light of the distance evidence must be transported from its existing location to the trial venue. *See Volkswagen II*, 545 F.3d at 316. The accused patent infringers are presumed to have the greater volume of documents relevant to the litigation such that more weight is placed on the location of those individuals' documents. *See, e.g., in re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *Volkswagen II*, 545 F.3d at 314-15. Documents that have been moved to

a particular venue in anticipation of litigation are not considered in this analysis. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).

To meet its burden under this factor, Defendants must identify their sources of proof with some specificity such that the Court may determine whether transfer to a particular district will increase the convenience of the parties. *J2 Global Comm'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009); *see also Invitrogen v. Gen. Elec. Co.*, No. 6:08-cv-113, 2009 WL 331889, at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties.")

In its declaration, NetApp states that Sunnyvale, California is "the strategic center of NetApp's business." (Dawkins Decl., ¶10.) NetApp further states that key "management, financial, and marketing teams" are based in Sunnyvale and it is where "most of development, design, and ongoing engineering development for the company occurs." (*Id.*) NetApp states that two of its accused products were developed at its headquarters in Sunnyvale, one product was developed by a team of engineers at Riverbed Technology in San Francisco, and SolidFire® was developed in Boulder, Colorado. (*Id.* at ¶¶12-15.) NetApp states that its "source code relating to the accused products, including SolidFire and the documents relating to the design development, testing, marketing and sales of the accused products are maintained on servers located in the Northern District of California." (*Id.* at ¶18.) NetApp acknowledges that SolidFire® documents are maintained in Boulder, Colorado, but emphasizes that they "are accessible electronically from NetApp's internal network maintained in its Sunnyvale headquarters. (Doc. No. 54, at 8-

9.)  Defendants do not provide any information about the location of Rackspace's sources of proof.

Realtime's declaration states that "[s]ince 2009, substantially all of Realtime's documents relating to its intellectual property development and licensing were either physically located at Realtime's Tyler office or exist electronically and will be collected from Realtime's Tyler office."  (Tashjian Decl., ¶5.)  Realtime asserts that it "did not open its Tyler office for the purpose of filing lawsuits in Tyler or anywhere else in this district."  (*Id.* at ¶4.)  Realtime argues that since all of NetApp's documents are apparently maintained electronically, there would be no inconvenience for NetApp to access its documents from this District.  (Doc. No. 80, at 8.) Elsewhere, Realtime emphasizes that Rackspace is headquartered in Texas and that SolidFire, although a wholly-owned subsidiary of NetApp, is still headquartered in Colorado.  (*Id.* at 6.)

In reply, NetApp again argues that documents related to SolidFire "are equally accessible at NetApp's Sunnyvale headquarters" when compared to Boulder.  (Doc. No. 82, at 1.)  NetApp also argues that it "only confirmed" that its documents are accessible electronically from its "internal network maintained in its Sunnyvale headquarters" and not that those documents are equally accessible in Texas.  (*Id.*)  NetApp argues that "Realtime has not shown that transfer to the Northern District of California would pose any inconvenience to Rackspace."  (*Id.* at 1-2.) NetApp also emphasizes that RackSpace is relying "exclusively" on NetApp documents for joint infringement allegations concerning Rackspace's Private Cloud product.  (*Id.* at 2.)  NetApp argues that its sales offices in Texas are immaterial to the transfer analysis and that Realtime's "shell" contacts with Texas "fail to budge the transfer needle."  (*Id.* at 2-3.)

In sur-reply, Realtime notes that "the burden is on Defendants, not Realtime" to show that the Northern District of California is a clearly more convenient forum for Rackspace.  (Doc.

No. 85, at 2.) Realtime also notes that Rackspace must at least have evidence pertaining to the accused Rackspace Cloud product because NetApp "purportedly has no connection" to that product. (*Id.*)

The Court disagrees with NetApp that Realtime's documentary evidence is entitled to no weight. Realtime's declarations make clear that it housed relevant documents in its Tyler office well in advance of this litigation and not for the purpose of manufacturing venue. However, the location of Realtime's documents and witnesses is afforded less weight than the location of Defendants' documents and witnesses. *See Genentech*, 566 F.3d at 1345 ("[T]he bulk of the relevant evidence usually comes from the accused infringer.")

While advances in technology have lightened the inconvenience of transporting large amounts of documents, this factor remains a part of the transfer analysis. *Volkswagen II*, 545 F.3d at 316. NetApp does not carry its burden on this factor by simply stating that certain evidence is "maintained on servers" at a certain location. (*See* Dawkins Decl., ¶18.) Such an open-ended assertion leads to speculation as to the actual location of evidence, not to mention where else that evidence might be accessible. Similarly unpersuasive is NetApp's carefully-worded assertion in its reply that it "only confirmed" that SolidFire® documents are also accessible from NetApp's "internal network maintained in Sunnyvale." (Doc. No. 82, at 1.) NetApp's declaration makes no reference to its "internal network." (Dawkins Decl., ¶15, 18.) Furthermore, this does not negate the fact that documents relating to SolidFire® are maintained in Boulder, which is slightly closer to this district than the Northern District of California. (*See* Doc. No. 54, at 8.)

Simply asserting that evidence is not located in this District leaves unsettled the extent transfer to the Northern District of California would actually increase the ease of access to

sources of proof in this litigation. NetApp is clear that its headquarters and thus many categories of its relevant documents are located or "maintained on servers" in the Northern District of California. But NetApp omits the location of Rackspace's sources of proof. NetApp is also clear that it did "not provide[] any technology or features to Rackspace for its Cloud Backup product." (Dawkins Decl., ¶9.) However, beyond acknowledging that Rackspace's headquarters are located in the Western District of Texas, NetApp provides no information about where witnesses or evidence related to the Cloud Backup product might be found.

It is not appropriate for Rackspace to simply piggy-back on NetApp's connections to California to allege that it is "clearly more convenient" for *all* Defendants to litigate in the Northern District of California under this factor or any of the other factors. NetApp is careful to downplay the significance of its sales offices in Texas. At the same time, Defendants emphasize that Rackspace has a 32-person satellite office in San Francisco. However, Defendants do not assert that relevant evidence or witnesses are housed in Rackspace's San Francisco office. Contrary to NetApp's assertion, it is not Realtime's burden to show that transfer to the Northern District of California would "pose any inconvenience" to Rackspace. (*See* Doc. No. 82, at 1-2.) It is the burden of the parties seeking transfer to show that the Northern District of California is *clearly more convenient* than this District. Given the lack of information that NetApp has put forward on this factor, the Court finds that it is inconclusive and thus will treat it as neutral.

b.     *The availability of compulsory process*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See Volkswagen II*, 545 F.3d at 316. The Court gives more weight to specifically-identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*,

No. 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010); *West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

NetApp identifies four inventors of prior art patents and systems who reside in the San Francisco Bay Area as non-party witnesses subject to subpoena power in the Northern District of California. (*See* Doc. No. 55 ("Mayer Decl."), ¶¶4-8, Exs. 2-6; Doc. No. 54, at 5.) Beyond identifying these individuals and stating that they "would not be subject to compulsory process in this District," NetApp does not provide any other information about their relevance or the possibility that they will be deposed or testify at trial. (Doc. No. 54, at 11.) NetApp also asserts that any of NetApp's critical party witnesses "who leave NetApp may require compulsory process." (*Id.*)

Realtime does not identify any relevant non-party witnesses of its own, but instead argues that "Defendants fail to show that any of these alleged third-party witnesses have any unique knowledge of relevant facts not already held by party-controlled witnesses." (Doc. No. 80, at 9.) Realtime also emphasizes that witnesses can easily appear at trial via videotaped deposition. (*Id.*) Realtime argues that NetApp fails to demonstrate the likelihood of its identified third-party witnesses actually testifying at trial. (*Id.*)

In reply, NetApp reemphasizes its identified third-party witnesses and "former employees" and argues that "[i]f the 'availability of compulsory process' means anything, then this factor weighs in favor of transfer." (Doc. No. 82, at 4.) In sur-reply, Realtime again emphasizes that NetApp has "cherry-picked" prior art witnesses that should be given little, if any weight because they are unlikely to testify at trial. (Doc. No. 85, at 3.) Realtime also notes that NetApp's "reliance on hypothetical former employees should be rejected." (*Id.*)

As in previous cases, while the Court recognizes Realtime's suggestion of playing videotaped depositions at trial may be a viable option under Rule 45, such a suggestion does not address the potential value added by having a witness testify in person at trial. The Court will not speculate as to whether the videotaped testimony of any of NetApp's proposed witnesses would be sufficient if played at trial in comparison to live testimony.

NetApp has identified the only potential third party witnesses in this matter. However, each of the witnesses that NetApp identifies by name is a prior art inventor. This Court has previously stated that "inventors of prior art rarely, if ever, actually testify at trial." *PersonalWeb Techs. LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar. 21, 2013). "[W]ithout even indicating on a good faith basis that a party intends to call a prior art witness to trial, it allows litigants to cherry-pick third parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Adaptix, Inc. v. Verizon Wireless*, No. 6:15-cv-00045, Doc. No. 32, at *8 (E.D. Tex. Aug. 12, 2015). The Court is not persuaded that NetApp intends on a good faith basis to depose these individuals, let alone have them testify at trial. *See id.* NetApp's identified prior art inventors are thus entitled to little, if any, weight in this analysis. Likewise, NetApp's argument that some of its party witnesses might leave the company and have to be summoned by subpoena to testify is entirely speculative. Given that none of the parties have submitted legitimate third party witnesses for the Court's consideration, the availability of compulsory process factor is neutral.

c.     *The cost of attendance for willing witnesses*

This factor gives broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account. *See id*.

NetApp again cites to the declaration of Mr. Dawkins, Vice President of Advanced Technology Group at NetApp, to support its identification of willing witnesses. (Doc. No. 54, at 10.) NetApp identifies eight employees as "having the most knowledge on various aspects of the accused NetApp products." (*Id.*; Dawkins Decl., ¶¶12-15.) Five of these employees are located in Sunnyvale, California. (Dawkins Decl., ¶¶12-14.) A sixth employee knowledgeable about AltaVault is located in Seattle. (*Id.* at ¶14.) In addition, the two employees that are purportedly most knowledgeable about SolidFire®'s compression and deduplication functionalities are located in Boulder. (*Id.* at ¶15.) NetApp asserts that it would be more convenient for the three "out-of-state" potential witnesses to travel to NetApp's Sunnyvale office than this District because they could work out of NetApp's Sunnyvale headquarters and thus reduce productivity lost during trial. (*Id.* at ¶17.) Rackspace does not identify any witnesses.

Realtime emphasizes NetApp's three regional sales centers in Texas and argues that relevant evidence regarding sale and operation of the accused products likely exists in this District. (Doc. No. 80, at 7.) Realtime also argues that NetApp has "failed to allege with any specificity what type of relevant knowledge is held by [NetApp's] witnesses, or why they would be necessary at trial." (*Id.* at 7.) Realtime also points out that Boulder, the location of two of NetApp's witnesses, is closer to this District than the Northern District of California. (*Id.*) Realtime emphasizes that Rackspace is headquartered near San Antonio and notes that its San Francisco office is not even listed as a contact location on Rackspace's website. (*Id.*) As to its own willing witnesses, Realtime identifies Deepika Pagala, an electrical engineer employee

located in Plano, Texas (Tashjian Decl., ¶7) and four potential party witnesses in New York (*Id.* at ¶¶2, 9). Realtime argues that if this case is transferred to the Northern District of California, its New York witnesses will be required to travel twice as far as they would if trial is held in this District. (Doc. No. 75, at 8.)

In reply, NetApp argues that the fact that there are no direct flights from Boulder to Tyler should be a consideration when deciding the convenience to travel to a particular venue. (Doc. No. 82, at 3.) NetApp also argues that Realtime's electrical engineer employee, Deepika Pagala, has not been identified as a potential witness in the case and should not be considered in the analysis. (*Id.*) NetApp emphasizes that there are no potential witnesses in NetApp's regional Texas sales offices. (*Id.* at 3-4.) NetApp also emphasizes that Rackspace "will be relying entirely on NetApp witnesses concerning Rackspace Private Cloud." (*Id.* at 4.)

In sur-reply, Realtime states that "[t]he full weight of this factor is difficult to measure given that Defendants have failed to identify any Rackspace witnesses." (Doc. No. 85, at 4.) Realtime again emphasizes that NetApp has failed to provide any specificity with respect to the knowledge held by NetApp's identified witnesses. (*Id.*) Realtime argues that NetApp provides no legal authority for its flight time argument and that NetApp further concedes in its original motion that there was "no significant difference" for the Colorado witnesses to travel between the two venues. (*Id.* (citing Doc. No. 54, at 10).)

As stated in previous cases, the fact that Realtime's New York witnesses have indicated that proceeding in this District will be more convenient for them is entitled to little weight. Because Realtime's named witnesses reside in New York, they "will be required to travel a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1345. Accordingly, any added inconvenience to Realtime's witnesses of traveling to California, rather than to Texas,

should not be overemphasized. With respect to Ms. Pagala, Realtime's electrical engineer employee who resides in this District, Realtime has not responded to Defendants' challenges regarding whether Ms. Pagala has relevant testimony. Indeed, beyond stating that Ms. Pagala "assists in the development and licensing of Realtime's intellectual property portfolio," Realtime has not indicated whether Ms. Pagala is expected to offer any relevant testimony in this case. (Tashjian Decl., ¶7.) The Court does not afford great weight to this potential Realtime witness, either.

Meanwhile, NetApp's declarant identifies a total of eight party witnesses: five employees who reside in the Northern District of California; one employee who resides in Seattle; and two employees who reside in Boulder. (Dawkins Decl., ¶¶12-15.) Defendants do not identify any Rackspace party witnesses.

This factor requires the Court to consider *all* potential material and relevant witnesses. *Volkswagen I*, 371 F.3d at 204. The fact that Defendants have not identified a single Rackspace witness is highly troubling. NetApp has made clear that it had no involvement with the technology related to at least one of Rackspace's two accused products. Yet there is no information about the location of witnesses or evidence related to that product. Indeed, Rackspace is headquartered in the Western District of Texas, much closer to this District than to the Northern District of California. Without information related to *all* of Rackspace's accused products, whether the Northern District of California would, in fact, be clearly more convenient for all of the parties in comparison to this District is speculative.

Further, even with respect to the witnesses NetApp does identify, beyond their association with a product and their title, NetApp does not provide any information about the nature of their knowledge or whether these witnesses are even likely to testify at trial. In order

for the Court to properly analyze convenience, specific witnesses should be identified with, at a minimum, a general statement providing the expected relevant and material information to the litigation at hand. "To hold a movant to a lesser standard would simply encourage the naming of individuals within a corporation based solely on where they reside rather than their connection and relevant knowledge pertaining to a particular litigation." *Adaptix*, No. 6:15-cv-00045, Doc. No. 32, at *11.

Defendants' five witnesses located in the Northern District of California would weigh in favor of transfer, as well as the Seattle witness, who would be less burdened by the shorter travel distance to the Northern District of California compared to this District. The two Boulder witnesses will have to travel to either forum and the difference between travel is negligible, such that these witnesses do not tip the scales in either direction. Realtime has not identified any legitimate witnesses that would weigh in favor of maintaining this action in this District. However, Defendants have failed to identify any potential witnesses for Rackspace, who is headquartered in the Western District of Texas and likely has relevant witnesses located in Texas that may weigh against transfer. Further, NetApp has provided scarce information about the nature of the testimony of the proposed witnesses it does identify. For these reasons, the Court weighs this factor only slightly in favor of transfer.

*d.*     *Other practical problems*

Practical problems include those that are rationally based on judicial economy. The existence of duplicative suits involving the same or similar issues may create practical difficulties that will effect transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*"Volkswagen III"*). Further, "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of

justice.'" *In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) (quoting *Volkswagen III*, 566 F.3d at 1351). The Court weighs this factor according to the situation that existed at the time the action was initiated. *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (indicating motions to transfer venue are to be decided based on "the situation which existed when the suit was instituted."); *In re EMC Corp.*, 501 F. App'x 973, 975-76 (Fed. Cir. Jan. 29, 2013).

NetApp argues that this factor is neutral because there will not be any "delay or prejudice as this case is in its early stages." (Doc. No. 54, at 12.) NetApp argues that the fact that Realtime has serially filed cases in this District should not have any bearing in the transfer analysis "[o]therwise Realtime could prevent a transfer of venue simply by suing more defendants." (*Id.*) Realtime emphasizes the district court's experience with the patents-in-suit from prior and pending litigation. (Doc. No. 80, at 10-11.) Realtime argues that transferring the case will consume judicial resources because it will require another court to address overlapping issues and create a risk of inconsistent rulings. (*Id.* at 11.)

At the time the Complaint was filed, Realtime's case against Apple had only recently been transferred to the Northern District of California. *See Realtime Data, LLC d/b/a IXO v. Apple, Inc.*, No. 3:16-cv-02595 (N.D. Cal. May 13, 2016). Thus, at that time, that court did not have substantial experience with respect to any of Realtime's patents, including family members of the patents-in-suit. On the other hand, at the time of the filing of this suit, there was at least some benefit to having the same judge handle related pretrial issues, including pretrial issues related to the three other Realtime cases filed in this District in February 2016. *In re EMC Corp.*, 501 F. App'x at 975-76; *see Realtime Data LLC v. Hewlett Packard Enterprise Co.*, No. 6:16-cv-86 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Savvis Comm'ns Corp.*, No. 6:16-cv-87 (E.D. Tex. Feb. 26, 2016); *Realtime Data LLC v. Dell, Inc.*, No. 6:16-cv-00089 (E.D. Tex.

Feb. 26, 2016). Although this Court also issued a memorandum opinion and order construing claim terms in another set of Realtime cases with overlapping patents on July 28, 2016, the Court will not consider that knowledge of some of the patents-in-suit in its analysis because it did not issue that Order until about a month after the Complaint in the above-captioned matter was filed. *See Realtime Data LLC v. Actian Corp.*, No. 6:15-cv-00463, Doc. No. 362 (E.D. Tex. July 28, 2016); *see in re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). The Court concludes that this factor is neutral.

### 2. Public Interest Factors

#### a. *Administrative difficulties flowing from court congestion*

NetApp argues that the first public interest factor is "not significant." (Doc. No. 54, at 13.) Realtime argues that because median time from filing to trial is faster in the Eastern District of Texas, this factor weighs against transfer. (Doc. No. 80, at 11 (citing Doc. No. 80, Ex. 3).) As the Court has repeatedly found in the past, reliance on general civil statistics provides the Court with little guidance as to the speed with which patent cases reach trial. *See West Coast Trends, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *4 (E.D. Tex., Oct. 27, 2011) ("[a]s is common with this factor, the parties cite to incongruous statistics which prevents the Court from drawing a meaningful conclusion as to court congestion."). Due to its speculative nature, this factor neutral.

#### b. *Local interest in having localized interests decided at home*

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Generally, however, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *In re TS Tech*, 551 F.3d at 1321;

*Volkswagen II*, 545 F.3d at 318 (disregarding local interest of citizens who used the widely sold product within the transferor venue in a products liability suit). Thus, when products are sold throughout the United States, citizens of a venue do not have a particularized interest in deciding the dispute simply based on product sales within the venue. *Nintendo*, 589 F.3d at 1198.

NetApp argues that the Northern District of California has a strong local interest in the resolution of this litigation because the "accused NetApp products were designed and developed in Northern California." (Doc. No. 54, at 13.) NetApp emphasizes that even though it has "three small sales offices" in Texas, none are in this district and none have relevant documents or evidence. (*Id.*) NetApp argues that Realtime's connections to this District are recent, ephemeral, and artifacts of litigation. (*Id.* at 14.) Realtime responds that NetApp's argument should be rejected because California jurors would be biased towards NetApp. (Doc. No. 80, at 11.) Realtime notes that "Texas has just as much interest in this case as California, if not more." (*Id.* at 12.) Realtime argues that Rackspace is located in Texas and has developed its products here. (*Id.*) Realtime also emphasizes that SolidFire is located in Boulder, which is closer to this District than the Northern District of California. (*Id.*) Realtime further argues that it has "deep ties" to the district, emphasizing its two offices and its employee in Plano, Texas. (*Id.*)

On the one hand, NetApp has identified several individuals whose work relates to the accused technology and who are located in the Northern District of California. However, other individuals who have performed work related to NetApp's accused technology are located in Boulder, Colorado. Further, Defendants have not provided the Court with information about Rackspace's potential evidence and witnesses. Texas may presumably have some level of local interest if employees at Rackspace headquarters in Windcrest, Texas were involved in the development and design of Rackspace products. *See In re Hoffmann-La Roche Inc.*, 587 F.3d

24

1333, 1336 (Fed. Cir. 2009) ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."); *Eon Corp. IP Holdings, LLC v. Sensus, USA Inc.*, No. 2:10-cv-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012). This District also has at least some local interest given that Realtime has two offices and one employee here. Ultimately, because Defendants have presented incomplete information regarding the location of witnesses and the development of the accused technology, it is not apparent that the Northern District of California has a stronger localized interest in the outcome of this litigation. The Court finds this factor is neutral.

### c. The Remaining Public Interest Factors

Both parties assert that the remaining two public interest factors are neutral. (Doc. No. 54, at 14; Doc. No. 80, at 12.) The Court agrees. With respect to the third and fourth factors, both courts are familiar with federal patent law and there are no conflicts of laws questions to avoid.

### 3. Weighing the Factors

For the reasons explained above, relative ease of access to sources of proof is inconclusive and thus neutral; availability of compulsory process is neutral; cost of attendance for willing witnesses is largely inconclusive, but the Court will weigh it slightly in favor of transfer; practical problems including judicial economy, are neutral; administrative difficulties flowing from congestion is neutral; local interest in having localized interests decided at home is

neutral; and the remaining public interest factors are neutral.  On balance, NetApp and SolidFire have failed to meet their burden of showing that the Northern District of California is "clearly more convenient" for all parties under the transfer factors.

## IV.    CONCLUSION

After consideration of the evidence submitted by the parties, the Court **DENIES** Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a).  (Doc. No. 54.)  The Court also **DENIES** NetApp and SolidFire's alternative request for severance and transfer.  The Court **DENIES AS MOOT** NetApp and SolidFire's Motion to Stay the Litigation Pending Resolution of NetApp and SolidFire's Motion to Transfer.  (Doc. No. 101.)

**So ORDERED and SIGNED this 27th day of February, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE