IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA, LLC, | § | |
| | § | |
| *Plaintiff,* | § | CIVIL ACTION NO. 6:16-CV-00961 |
| | § | RWS-JDL |
| v. | § | |
| | § | LEAD CASE |
| RACKSPACE US, INC., NETAPP, INC., | § | |
| and SOLIDFIRE, INC., | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants NetApp, Inc. ("NetApp") and SolidFire, LLC's ("SolidFire") Motion to Stay Pending Instituted *Inter Partes* Review. (Doc. No. 51.) Plaintiff Realtime Data LLC ("Realtime") has filed an Opposition (Doc. No. 79), NetApp and SolidFire have filed a Reply (Doc. No. 81), and Realtime has filed a Sur-Reply (Doc. No. 84).[1]

---

[1] After briefing on the Motion was complete, Defendants Rackspace US, Inc. ("Rackspace"), Quantum Corporation ("Quantum"), and Fujitsu America, Inc. ("FAI") individually filed "Notices of Joinder" with NetApp and SolidFire's Motion to Stay Pending *Inter Partes* Review. (*See* Doc. Nos. 95, 97, and 103.) Quantum's and FAI's Notices include Certificates of Conference indicating that Realtime opposes these Defendants' joinder. (*See* Doc. Nos. 97, 103.) Rackspace does not include a Certificate of Conference in its Notice. (Doc. No. 95.) Given the Court's recent Memorandum Opinion and Order granting Quantum and FAI's Motion to Transfer Case No. 6:16-cv-1035 to the Northern District of California, the Court does not consider those Defendants' Notices of Joinder. With respect to Rackspace, Rackspace did not invest any time or effort into preparing and filing a Motion to Stay. Indeed, Rackspace has not even indicated that it 1) sought and received NetApp's consent to join in NetApp's Motion or 2) conferred with Realtime regarding its joinder. Rackspace also states in its Notice that one additional patent is asserted against Rackspace that is not asserted against NetApp or SolidFire. Defendants have not indicated that any IPR petitions have been filed on that patent. Furthermore, Rackspace states that it is agreeing to be bound by statutory estoppel specifically with respect to four *Inter Partes* Review proceedings, identified by number. Given the different facts and circumstances surrounding Rackspace with respect to a proposed stay, the proper course of action was for Rackspace to either join NetApp and SolidFire's Motion originally or file a separate Motion to Stay explaining how Rackspace's particular situation impacts the stay analysis. At the very least, Rackspace should have included a Certificate of Conference to explain whether it had properly conferred with the other parties in this matter. For these reasons, the Court does not consider Rackspace to have properly joined in NetApp and SolidFire's Motion and does not consider Rackspace in its analysis.

1

Having considered the NetApp and SolidFire's arguments and for the reasons set forth below, NetApp and SolidFire's Motion to Stay is **DENIED**.

## BACKGROUND

Realtime has filed three sets of cases currently before the Court that are relevant to this Motion. Realtime filed the first set of cases on May 8, 2015. *See Realtime Data LLC d/b/a IXO v. Actian et al.*, No. 6:15-cv-463 (E.D. Tex. May 8, 2015) (lead case) ("*Actian* action"). On February 26, 2016, Realtime filed a second set of cases. *See Realtime Data LLC v. Hewlett Packard Enterprise Co.*, No. 6:16-cv-86 (E.D. Tex. Feb. 26, 2016) ("*HPE* action"). Realtime then filed the above-captioned action on June 29, 2016 and another case soon after on July 21, 2016. *See Realtime Data, LLC v. Fujitsu America, Inc.*, No. 6:16-cv-1035 (E.D. Tex. Jul. 21, 2016); (*see also* Doc. No. 1.). According to NetApp,[2] Realtime has asserted six patents against NetApp and SolidFire in the above-captioned action: four patents that were first asserted in the *Actian* action (U.S. Patent No. 7,415,530 ("the '530 Patent"); U.S. Patent No. 9,116,908 ("the '908 Patent"); U.S. Patent No. 8,643,513 ("the '513 Patent"); and U.S. Patent No. 7,378,992 ("the '992 Patent")) and two patents that were first asserted in the *HPE* action (U.S. Patent No. 7,161,506 ("the '506 Patent") and U.S. Patent No. 9,054,728 ("the '728 Patent")) (collectively "Asserted Patents"). (Doc. No. 51, at 2.)

In April and May 2016, various defendants in the *Actian* and *HPE* actions began filing petitions for *Inter Partes* Review ("IPR") with the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("USPTO"), seeking cancellation of multiple claims of the Asserted Patents pursuant to 35 U.S.C. § 311 and 37 C.F.R. §§ 42.1 *et seq*. To the best of the Court's knowledge, none of the Defendants in the above-captioned case, including

---

[2] Given that SolidFire is a wholly-owned subsidiary of NetApp and the two parties have jointly filed the currently-pending Motions, the Court will refer to both entities collectively as "NetApp" unless otherwise noted. (*See also* Doc. No. 51, at 1.)

NetApp and SolidFire, have participated in filing or joining in the filing of any of the IPR petitions against the Asserted Patents. At the time NetApp filed its Motion to Stay, nine IPR petitions had been filed on the Asserted Patents. Soon after NetApp filed its Motion, defendants in the *HPE* action filed two additional IPR petitions against the '728 and '506 Patents. (*See* IPR2017-00176; IPR2017-00179.) The undersigned recently issued an order in the *HPE* actions granting a stay pending IPR with respect to some defendants and denying a stay with respect to other defendants. *See HPE* action, Doc. No. 89.

Four of the six Asserted Patents have had IPRs instituted with respect to a subset of their claims. ('992 Patent, '530 Patent, '513 Patent, and '908 Patent.) The PTAB must issue a Final Decision within one year of the date an IPR petition is instituted. 35 U.S.C. § 316(a)(11). Some of the IPRs on the Asserted Patents are expected to have institution decisions as soon as June 27, 2017. (*See* IPR2016-00373; IPR2016-00374.) Final Decisions are not expected for some of the other IPRs until November 1-4, 2017. (*See* IPR2016-00980; IPR2016-00972; IPR2016-00978; IPR2016-01002.)

Two of the six Asserted Patents have IPR petitions filed, but have not yet received any institution decisions. (*See* IPR2016-01672; IPR2017-00108; IPR2017-00176; IPR2017-00179.) If instituted, Final Decisions for these IPRs would not be expected until approximately March or April 2018 at the earliest.[3]

---

[3] A patent owner has three months from "the date of a notice indicating that the request to institute an *inter partes* review has been granted a filing date" to file a preliminary response to a petition for IPR. 37 CFR 42.107(b); *see also* 35 U.S.C. § 313. The PTAB then has three months from the date the patent owner files a preliminary response to determine whether to institute IPR. 35 U.S.C. § 314(b)(1). If a patent owner does not file a preliminary response, the PTAB has three months from the last date on which a preliminary response could have been filed to determine whether to institute IPR. 35 U.S.C. § 314(b)(2). Thus, the PTAB will have at most six months from the filing date of an IPR petition to determine whether to institute IPR. The PTAB will then usually have an additional year from institution in which to issue a Final Decision.

NetApp filed the instant motion on November 11, 2016, requesting a stay of all proceedings against it until final resolution of the pending IPR petitions. (Doc. No. 51.) Trial in this matter is set for January 22, 2018. (Doc. No. 100.)

## **LEGAL STANDARD**

"Courts have the inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion" of a PTO administrative proceeding. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). The party seeking a stay bears the burden of showing that such a course is appropriate. *See Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A stay pending an administrative proceeding is not automatic; rather, it must be based upon the circumstances of the individual case before the court. *See, e.g., Datatreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp.2d 749, 755 (E.D. Tex. 2006). While the case law states several general considerations that are helpful in determining whether to order a stay, ultimately the Court must decide stay requests on a case-by-case basis. *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. 06–cv–04206–WHA, 2007 WL 1052883, at * 1 (N.D. Cal. Apr. 5, 2007) ("From a case management perspective, the possible benefits must be weighed in each instance against the possible drawbacks."). Though a stay is never required, it may be "particularly justified where the outcome of the [administrative proceeding] would be likely to assist the court in determining patent validity and, if the claims were canceled in the [administrative proceeding], would eliminate the need to try the infringement issue." *In re Cygnus Telecomms. Tech., LLC, Patent Litig.*, 385 F.Supp.2d 1022, 1023 (N.D. Cal. 2005) (*citing Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)). Indeed, "an auxiliary function [of the proceeding] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration." *In re Etter*, 756 F.2d

852, 857 (Fed. Cir. 1985). Nevertheless, there is no per se rule that patent cases should be stayed pending PTO proceedings, because such a rule "would invite parties to unilaterally derail litigation." *Soverain Software LLC v. Amazon.Com, Inc.*, 356 F.Supp.2d 660, 662 (E.D. Tex. 2005); *See also Comcast*, 2007 WL 1052883, at *1 ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner."). In deciding whether to stay a given action, courts frequently consider three factors: (1) whether the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Soverain*, 356 F.Supp.2d at 662.

## DISCUSSION

### I.      Simplification of the Issues

NetApp argues that the "complexity of this case strongly favors a stay." (Doc. No. 51, at 10.) NetApp asserts that the high institution rate of IPRs makes it more likely that it will simplify the issues. (*Id.*) NetApp notes that many of the Asserted Patents are subject to instituted IPRs, and "PTAB review thus has the potential to significantly streamline this action." (*Id.*) NetApp argues that even if some claims survive IPR, the proceedings will still likely simplify the case by potentially cancelling the other subset of the claims. (*Id.*) NetApp further argues that any statements made by Realtime during IPR proceedings will be part of the intrinsic record and the parties will be able to consider those statements during claim construction. (*Id.* at 10-11.) Realtime argues that it is asserting infringement of at least two claims that are not currently the subject of IPR petitions or institutions. (Doc. No. 79, at 2 (citing '530 Patent, Claim 20 and '908 Patent, Claim 3).) Realtime also argues that IPR petitions for the '728 and

5

'506 Patents have not yet been instituted and argues that it is the "universal practice" to deny pre-institution motions to stay. (*Id.* at 3.) Realtime also argues that NetApp and SolidFire are not petitioners with respect to any of the pending IPRs or IPR petitions. (*Id.*) Realtime states that because "moving Defendants do not unequivocally say that they agree to be bound by the full estoppel effect of 35 U.S.C. § 315(e)," simplification of the issues is unlikely. (*Id.* (citing *Intellectual Ventures II LLC v. Kemper Corp.*, No. 6:16-cv-81, Doc. No. 57 (E.D. Tex. Nov. 7, 2016)).) In reply, NetApp reemphasizes that without a stay, "this Court will address claim construction in parallel to the PTAB, and the parties may be placed in the undesirable position of seeking leave to amend their contentions to account for the outcome at the PTAB." (Doc. No. 81, at 2.) NetApp argues that Realtime's argument regarding denial of pre-institution motions to stay is inapplicable because the PTAB has instituted IPRs on four of Realtime's six Asserted Patents. (*Id.*) NetApp also notes the similarities between the patents where IPRs have been instituted and the patents were IPR petitions are pending. (*Id.* at 2-3.) NetApp argues that the claims for which no IPR has been requested are likewise similar to IPR-instituted claims, and thus the PTAB's decisions would be helpful in informing the Court's analysis with respect to those claims. (*Id.* at 3.) In a footnote, NetApp notes that "if the case is stayed, the NetApp Defendants are willing to stipulate not to raise invalidity arguments in this case that the PTAB considers and rejects during IPR proceedings that the PTAB institutes at the request of other petitioners, consistent with 35 U.S.C. § 315(e)(2)." (*Id.* at 4 n.1.) In sur-reply, Realtime points out that NetApp's footnote statement that it will not raise "invalidity arguments in this case that the PTAB considers and rejects during IPR proceedings" is not equivalent to the full scope of statutory estoppel under Section 315(e)(2). (Doc. No. 84, at 1.) Realtime reiterates that IPRs are not yet instituted with respect to the '728 and '506 Patents and again states that it is the

"universal practice" to deny motions to stay filed prior to IPR institution. (*Id.* at 2.) Realtime argues that NetApp's comparison of claims that are and are not subject to pending IPR is a "gross oversimplification" that should be rejected. (*Id.* at 3.)

As previous courts in this district have found, "[w]hen IPR is instituted on all asserted claims and when all defendants are bound by the estoppel provisions of 35 U.S.C. § 315, this factor generally favors as stay." *SSL Servs., LLC v. Cisco Sys., Inc.*, No. 2:15-cv-433, 2016 WL 3523871, at *3 (E.D. Tex. June 28, 2016). However, where defendants do not agree to be bound by the full estoppel provisions of § 315, IPR "may not actually simplify the issues at all." *Intellectual Ventures II*, No. 6:16-cv-81, Doc. No. 57, at *5.

NetApp has not filed any type of notice or declaration explicitly stating that it agrees to be bound by some form of estoppel, let alone the exact extent of that estoppel. Under Section 315(e)(2), an IPR petitioner may not assert that a claim is invalid in a civil action "on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315. In a footnote, NetApp makes the confusing assertion that "the NetApp Defendants are ***willing to stipulate*** not to raise invalidity arguments in this case ***that the PTAB considers and rejects during IPR proceedings*** that the PTAB institutes at the request of other petitioners, ***consistent with 35 U.S.C. § 315(e)(2)***." (*Id.* at 4 n.1 (emphasis added).) NetApp's recitation that it will not raise arguments "that the PTAB considers and rejects during IPR proceedings" is inconsistent with the full scope and measure of Section 315(e)(2) recited above. NetApp would not simplify the issues with such a stipulation.

Further, at least two of the asserted claims in this case are not the subject of instituted IPRs. If NetApp was subject to the full statutory estoppel provisions of Section 315 there would likely be some simplification of the issues. However, given that there are asserted claims in this

case that are not subject to IPR petitions, at this time there is no possibility that the IPR proceedings could fully resolve patent validity. Thus, simplification would not be to the same extent as in the *HPE* action, where all claims are the subject of pending or instituted IPR petitions.

The Court finds that this factor is neutral or weighs slightly against a stay with respect to NetApp and SolidFire because they have not agreed to be bound by the full statutory estoppel provisions and not all asserted claims are subject to IPRs.

## II.     Undue Prejudice to Plaintiff

NetApp argues that Realtime will not suffer undue prejudice if the Court grants a stay pending IPR because Realtime is a non-practicing entity that does not compete with Defendants or sell products that practice the asserted patents. (Doc. No. 51, at 8-9, 8 n.7.) NetApp also argues that "Realtime itself will benefit from a narrower invalidity case, as the NetApp Defendants will be stopped from re-litigating the invalidity of any claim remaining after the IPRs on grounds they raised or reasonably could have raised during the IPRs." (*Id.* at 9.) Realtime counters that it has an interest in the timely enforcement of its patent rights. (Doc. No. 79, at 5-6.) Realtime notes that specifically with respect to the '728 and '506 Patents, assuming IPR is even instituted, the PTAB is not required to issue a final determination until April 2018. (*Id.* at 5.) Realtime argues that delay could be "further exacerbated if Defendants invoke their right to appeal the PTAB's decision to the Federal Circuit." (*Id.*) Realtime also argues that a stay risks the loss of Realtime's evidence, but "Defendants do not face the same danger, as their invalidity claims are based largely on prior art references, which do not change." (*Id.* at 6.) Realtime argues that a stay will deprive Realtime of its chosen forum. (*Id.*) Further, Realtime argues that the tactical advantage to NetApp is more pronounced because NetApp and SolidFire are not

8

petitioners in the IPRs and have not agreed to be bound by the estoppel provisions under 35 U.S.C. § 315(e). (*Id.* at 7.) In reply, NetApp argues that Realtime "does not articulate any specific harm that it might face from the modest delay a stay pending IPRs would cause." (Doc. No. 81, at 4.) NetApp argues that the Court would be "greatly aided by the additional record (and case narrowing) to be provided in the IPRs." (*Id.*) NetApp further argues that Realtime does not have an absolute right to have the validity of its patent claims tested in Court rather than before the PTAB. (*Id.*) In sur-reply, Realtime reiterates that "forcing Realtime to litigate validity issues exclusively before the PTAB puts Realtime at a significant tactical disadvantage." (Doc. No. 84, at 3.) Realtime notes that it will be forced to expend considerable resources on IPR proceedings while NetApp will not have to expend any resources because it is not a petitioner in any of the pending IPRs. (*Id.* at 4.) Realtime also notes that even assuming the IPR petitions on the '728 and '506 Patents are instituted, final decisions for those IPRs would not be expected until after trial is set for this case. (*Id.*)

The fact that Realtime is a non-practicing entity and is merely pursuing monetary damages would not preclude Realtime from experiencing prejudice if the Court granted Defendants' motion to stay. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.,* No. 2:13-cv-00213, 2015 WL 627887, at *2 (E.D. Tex. Jan. 29, 2015). Although courts have recognized that non-practicing entities may be less prejudiced by a stay than a marketplace competitor, *Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-cv-00799, 2014 WL 4477393, *2 (E.D. Tex. July 25, 2014), Realtime has an interest in the timely enforcement of its patent rights. *Ambato Media, LLC v. Clarion Co., Ltd,* No. 2:09-cv-242, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012); *Voltstar Technologies, Inc. v. Superior Commc'ns, Inc.,* No. 2:12-cv-00082, 2013 WL 4511290, at *2 (E.D. Tex. Aug. 22, 2013)); *see also Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-

cv-1047, 2015 WL 1069179, at *2 (E.D. Tex. Mar. 11, 2015).  However, as the Court has also recognized in previous cases, concerns such as timely enforcement of patent rights are generally too generic, standing alone, to defeat a stay motion.  *NFC Tech. LLC v. HTC America, Inc.*, No. 2:13-cv-1058, 2015 WL 1069111, *2-3 (E.D. Tex. Mar. 11, 2015).

As previously stated, the undersigned recently issued an order in the *HPE* actions granting a stay pending IPR with respect to some defendants and denying a stay with respect to other defendants.  *See HPE* action, Doc. No. 89.  A key factor in the analysis was the issue of statutory estoppel: where it was clear that a defendant was bound by the full statutory estoppel provisions, the issue simplification and prejudice factors were more likely to weigh in favor of a stay.  Although not explicit, the Court's stay analysis in the *HPE* action was also influenced by the fact that a number of the *HPE* action defendants were themselves involved in filing or joining in the filing of the IPR petitions.  Dell and HPE had filed IPR petitions on all of the Realtime patents asserted against them.  Meanwhile, EMC had joined in the filing of at least two of the IPR petitions.  Overall, the moving defendants included a number of entities who had actively sought *inter partes* review as an alternative forum to resolve questions of patent validity.[4]

That is not the case here.  Neither NetApp nor SolidFire have joined in the filing of a single IPR petition with respect to the patents-in-suit.  The non-moving Defendants in the above-captioned actions have not joined the filing of IPR petitions, either.  Weighing this factor in favor of stay on the sole basis of a stipulation of statutory estoppel would essentially pave the way for any non-petitioning defendant to simply sit back and wait for petitioning entities actively engaged in IPR proceedings to finish litigating patent validity before the PTAB.  The patentee is

---

[4] Indeed, even Savvis and Veritas, defendants who did not file any of the IPR petitions and against whom the Court originally denied a stay, have since informed the Court that they filed joinder petitions in three instituted IPR proceedings against Realtime patents.  *See Realtime Data, LLC v. Savvis Comm'ns Corp.*, No. 6:16-cv-87, Doc. No. 98 (E.D. Tex. Feb. 10, 2017).

effectively deprived of its day in court—or at least significantly delayed from receiving its day in court—without any effort expended on the part of the non-petitioning defendants. Even if NetApp agreed to be bound by the statutory estoppel provisions of Section 315, in these circumstances, this factor would still indicate undue prejudice towards Plaintiff.

Given that NetApp has not agreed to by bound by the full statutory estoppel provisions of 35 U.S.C. § 315 and has not joined in the filing of a single IPR petition against the asserted patents, this factor weighs strongly against staying this case.

### III. Status of the Case

NetApp argues that a stay is warranted because at the time it filed its Motion, the case was in its infancy. (Doc. No. 51, at 7.) NetApp notes that another Defendant had not even answered the complaint and the parties had not held an initial scheduling conference. (*Id.*) Realtime argues that the other Defendant had in fact already answered the Complaint. (Doc. No. 79, at 7 (citing Doc. No. 38).) Realtime notes that a scheduling conference took place just five days after NetApp filed its Motion and that the Court entered a Docket Control Order and other relevant scheduling orders. (Doc. No. 79, at 7.) Realtime emphasizes that substantial resources are necessary to coordinate a schedule, and notes that Realtime has already served infringement contentions. (*Id.*)

This case is in its nascent stages. When NetApp filed their motion, the Court had not even held a Scheduling Conference. Trial is set in January 2018. (*See* Doc. No. 100.) This factor weighs in favor of a stay.

### CONCLUSION

For the reasons stated above, simplification of the issues is neutral or weighs slightly against stay, undue prejudice weighs strongly against a stay, and status of the case weighs in

11

favor of a stay. After considering these factors and the totality of the circumstances, the Court finds that NetApp has not met its burden of showing that a stay pending the outcome of IPRs on the Asserted Patents is appropriate in this case. Accordingly, the Court **DENIES** NetApp and SolidFire's Motion to Stay Pending Instituted *Inter Partes* Review. (Doc. No. 51.)

**So ORDERED and SIGNED this 27th day of February, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE