IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| REALTIME DATA LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:16-CV-00961-RWS |
| | § | |
| v. | § | |
| | § | |
| NETAPP, INC., AND SOLIDFIRE, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Defendants NetApp and SolidFire ("NetApp") have filed a Motion to Strike Portions of Dr. Wesel's Report Regarding Infringement. (Doc. No. 231.) Plaintiff Realtime responded (Doc. No. 239), NetApp replied, (Doc. No. 242) and Plaintiff filed a Sur-Reply. (Doc. No. 246.) NetApp also has a pending Motion for Leave to File a Motion to Strike. (Doc. No. 232.) Realtime did not respond.

## BACKGROUND

On June 29, 2016, Realtime filed this action against NetApp. (Doc. No. 1.) On November 18, 2016, Realtime disclosed the asserted claims and infringement contentions. (Doc. No. 117 at 3.) On December 20, 2016, NetApp informed Realtime they were deficient and supplemental contentions were provided on January 17, 2017. *Id.* Realtime requested in an eleven-page letter for more details and provided examples of the deficiencies in the contentions. *Id.* at 4. Realtime provided a second amended contention on March 1, 2017. *Id.* On March 24, 2017, NetApp filed a motion to strike Realtime's infringement contentions and compel compliance under Patent L.R. 3-1, (*Id.*) and it was fully briefed. (Doc. Nos. 146, 149, 152.)

1

The Court granted the motion in part and ordered Realtime to serve NetApp with clear claim constructions on what aspect of the accused products satisfied each key claim term. (Doc. No. 156.) Realtime provided the third supplemental contentions (Doc. No. 239-2.) Realtime then provided NetApp with its expert report for Dr. Wesel on August 18, 2017. (Doc. No. 239-8 at 2.) NetApp filed a response and expert report of James Storer. (Doc. No. 239-9 at 2.)

## **LEGAL STANDARD**

Under the Eastern District's Local Patent Rules, a party must file a "Disclosure of Asserted Claims and Infringement Contentions." Patent L.R. 3-1. This Rule provides that a party asserting infringement must, in its disclosure: (a) identify each patent claim that is infringed; (b) identify each accused product for each claim; (c) provide a chart identifying specifically where each limitation of each asserted claim is found in each accused product for each claim; and (d) specify whether infringement is literal or based on the doctrine of equivalents. *See id.* Infringement contentions are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process. *Linex Techs. Inc. v. Belkin Intern., Inc.*, 628 F.Supp.2d 703, 713 (E.D. Tex. 2008) ("The Infringement Contentions are intended to disclose information as a means to expediting the discovery process.").

The expert report cannot introduce theories not previously set forth in infringement contentions. *Roy-G-Biv Corp. v. ABB, Ltd.*, 63 F.Supp.3d 690, 699 (E.D. Tex. 2014). However, the scope of infringement contentions and the expert report are not coextensive. *Id.* The infringement contentions "need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case.'" *Id.* (citing *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09-cv-116, 2010 WL 346218, *2 (E.D. Tex. Jan. 21, 2010)). Whereas, the expert report must

include a complete statement of the expert's opinions, the basis and reasons for the opinions, and any data or other information considered when forming them.  Fed. R. Civ. P. 26(a)(2)(B).

The court has inherent power to enforce its orders and to impose sanctions if its rules are violated.  *Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-cv-158, 2008 WL 7180756, at *2 (E.D. Tex. May 1, 2008).  However, the interpretation of discovery provisions of the Local Patent Rules should not conflict with, and should harmonize with, discovery provisions of the Federal Rules of Civil Procedure.  *Id.*  Deciding if the expert report should be struck is akin to excluding evidence due to a discovery violation.  *Id.*  Therefore, the court considers a non-exclusive list of factors before it decides to impose such sanctions.  *Id.* at *3 (granting a motion to strike expert report because of a failure to disclose infringement contentions).

## **DISCUSSION**

NetApp argues that Realtime's Expert opined on new theories that were not disclosed in Realtime's Infringement Contentions.  (Doc. No. 231.)  Specifically, NetApp first states that Realtime did not identify SolidFire's zero-block deduplication in its contentions for the '513 patent and only focused on inline deduplication.  *Id.* at 5–6.  Realtime argues that NetApp admitted in its discovery response that it was aware of the contentions of zero-block deduplication.  (Doc. No. 239 at 16.)  Realtime maintains inline deduplication is a sufficient disclosure because "SolidFire, inline zero-block deduplication and inline deduplication are essentially two parts, or two aspects, of the broader inline deduplication process."  *Id.* at 17.  Realtime maintains it identified SolidFire's "Global thin provisioning" feature, which includes zero-block deduplication.  *Id.*

NetApp fails to show there was no notice of zero-block deduplication in the infringement contentions.  NetApp's argument relies on the fact that the word zero-block deduplication is

3

never stated in the infringement contentions. However, Realtime specifically identifies the Global thin provisioning feature (Doc. No. 239-2 at 10), and NetApp's witness admits at deposition that zero-block deduplication is part of this feature. (*See* Doc. No. 239-8 at 12 ("Wesel's Report") (quoting Randall Depo. 188-191)). This shows that NetApp had some awareness that zero-block deduplication was at issue. Although Realtime may not have disclosed the word specifically, unlike expert reports, infringement contentions are not meant as a vehicle to litigate the merits of an infringement position. *Linex*, 628 F.Supp.2d at 713. Rather, the vehicle to investigate theories is the discovery avenues provided for in the federal rules, interrogatories, depositions and expert reports. Considering the narrow purpose infringement contentions are meant to serve, Realtime provided sufficient notice regarding zero-block deduplication.

Second, NetApp argues that Realtime failed to disclose an infringement contention stating that the accused instrumentality is comprised of two devices. (Doc. No. 231 at 9.) NetApp cites language stating "[t]he Accused Instrumentality includes the memory device" and the "[t]he Accused Instrumentality includes the data accelerator," as representing that the accused device is a single device. *Id.* at 10. NetApp argues the report "abandons the theory [] and instead relies on two NetApp devices working together in a specific configuration" and this expands the theory and affects discovery. *Id.* at 10–11. Realtime argues that the two-device configuration is shown in an infringement contention diagram. (Doc. No. 239 at 9.) Realtime further maintains that the contention never indicates it is the same device or only one device, and NetApp is improperly inserting limiting language into the term "Accused Instrumentality." *Id.* at 10.

The infringement contention diagrams show a two-device configuration comprised of two "On Premises" devices where one device sends information to the secondary device:



(Doc. No. 239-2 at 31.) NetApp argues that the diagram is insufficient to put it on notice because in ruling on an earlier motion brought by NetApp, the Court stated screenshots are insufficient to comply with the requirements for infringement contentions. (Doc. No. 242 at 2.) While the Court found that "Realtime cannot fill in the gaps with screen shots," (Doc. No. 153 at 3), it did not address whether the contentions disclosed only a one device configuration. Nor does such a finding amount to a conclusion that the screenshot referenced above does not provide some notice to NetApp of a two device configuration. *See Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808, 2016 WL 612907, at *8 (N.D. Cal. Feb. 16, 2016) (finding a screenshot was adequate notice). In its infringement contentions, Realtime provides some background on its contentions, and then includes three screen shots with information on the accused instrumentality, along with the above exhibit showing two devices. (Doc. No. 239-2 at 29–32) (providing contentions for the '530 Patent citing NetApp features on improving storage utilization, NetApp's optional features, and figures on their data management). The one or

single device configuration appears to be NetApp's characterization of the theory. Because there is no characterization that the accused instrumentality is a singular device, and considering the diagram and description above, the contentions provide sufficient notice of a two device configuration.

Third, NetApp claims that Realtime's infringement contentions do not disclose a theory for the '530 patent that relies on post-process deduplication. (Doc. No. 231 at 11–12.) NetApp states that it specifically questioned Realtime in a letter about this deficient disclosure, saying that Realtime "did not specify what was accused as a first or second compression technique." *Id.* at 11. NetApp maintains that Realtime's expert improperly dropped Realtime's prior infringement allegations to rely on a combination of post-process compression and post-process deduplication for two compression techniques. *Id.* Realtime counters that NetApp admitted in fact discovery that the contentions for the '530 patent included post-process deduplication. (Doc. No. 239 at 10.) Realtime argues that post-process deduplication is a form of deduplication, and the mere fact it identified additional examples does not mean it intended to exclude post-process deduplication. *Id.* at 10–11. Realtime concludes that its contentions identification of "deduplication" actually refers to post-process deduplication. *Id.*

A review of the contentions reveals that NetApp was on sufficient notice of post-process deduplication as a theory. NetApp's argues that Realtime only identified two compression techniques, but the contentions state that the deduplication "*includes* inline deduplication and zero block deduplication," not that they are limited to these two forms. (Doc. No. 239-2 at 38) (emphasis added). Although Realtime may not have explicitly used the term post-process deduplication, in its infringement contentions Realtime referred generally to deduplication and its contention described post-process deduplication. *Id.* at 54 ("NetApp deduplication is a

6

process that can be scheduled to run when it is most convenient[.]"); *see Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 786606 at *3 (E.D. Tex. Feb. 26, 2010) (finding that Defendant was on notice other operating systems may be part of an accused server when it only listed one system as an example).

Fourth, NetApp alleges that Realtime's expert mixed the various features to "derive three alternative sets of infringing combinations." (Doc. No. 231 at 12–13.) NetApp argues the expert had twenty-one possible combinations of its features that were not previously disclosed and raise questions for discovery and claim construction. *Id.* at 13. Realtime states that it disclosed two compression techniques and three deduplication techniques in its contentions and this provides notice of the different combinations. (Doc. No. 239 at 12.) Further, Realtime counters that Dr. Wesel's opinion narrows the theories in contentions by setting forth three different combinations for each patent. *Id.* at 12–13.

The purpose of infringement contentions is to provide notice of infringement theories resulting in more efficient and streamlined discovery. *Linex*, 628 F.Supp.2d at 713. The vehicle to investigate theories is the discovery avenues provided for in the federal rules, interrogatories, depositions and expert reports. NetApp's argument relies on the fact that naming three types of compression and three types of deduplication does not provide notice that these compressions and deduplications will be mixed and matched. However, NetApp fails to show that this contention was presented in a way that excluded combining these techniques.

Fifth, NetApp argues that the expert identified two new features at step one of claim 1 of the '530 patent: (1) a check of whether a block was previously compressed; and (2) a check of whether a block is all zeroes. (Doc. No. 231 at 14.) NetApp maintains that Realtime stated that its infringement contentions only allowed for compression applied to a data block if a threshold

7

amount of space was saved. *Id.* Realtime argues that it cites NetApp's own documents that state "compression groups are tested for compressibility" and this includes checking if the previously block was compressed, which provided adequate notice. (Doc. No. 239 at 13.) Realtime argues that it cites source code that specifically identifies a check of whether the block is all zeroes. *Id.* at 13–14. Realtime notes that it contentions specifically state that the Accused Instrumentality identifies if the data block consists of zeroes at step two analysis, and NetApp's expert recognized that step one and step two analysis are the same. *Id.* at 14.

As to whether Realtime sufficiently disclosed a zero block check, Realtime's infringement contentions state that the accused instrumentality looks at the data block to see if it consists of all zeroes. (Doc. No. 231-4 at 36.) Although NetApp argues this is directed to the second analyzing step, Realtime notes that NetApp's own expert stated the analysis is the same as the analysis of the first step. (Doc. No. 239-9 at 5 ("Storer invalidity report").)

Realtime also argues that it provided notice that a feature includes a check on whether a block was previously compressed through a screenshot of NetApp's document. (Doc. Nos. 239 at 13, 239-2 at 85.) In its infringement contentions, Realtime provides examples for the compression techniques used in its accused instrumentality. (Doc. No. 239-2 at 85.) Realtime then includes several screen shots detailing how the data compression works. *Id.* at 84–88. In one of the screenshots, it notes that the "[c]ompression groups are tested for compressibility before any compression takes place." *Id.* at 86. This screenshot provides sufficient notice of a check on whether a block was previously compressed. *Finjan, Inc.*, 2016 WL 612907 at *8.

Sixth, NetApp argues the expert identified six additional values that can be a "characteristic, attribute, or parameter" besides the two given in the Third Supplemental Infringement Contention for the '513 patent. (Doc. No. 231 at 15.) NetApp maintains that the

8

'728 patent has similar values as the '513 patent but the expert report identifies three new values. *Id.* at 15–16. Realtime counters that its infringement contentions show each of the values that NetApp objects to. (Doc. No. 139 at 14–15.)

Realtime cites to different exhibits in its document that explicates these values. (Doc. 239-2 at 18–20, 91–94.) NetApp argues these are "screenshots" that fail to give adequate notice. (Doc. No. 242 at 4.) However, Realtime is not charged with developing its litigation positions at the infringement contention stage; the purpose is to aid in discovery. *Linex*, 628 F.Supp.2d at 713. In its contentions, Realtime provides examples for the characteristic, attribute, or parameter of the accused instrumentality. (Doc. No. 239-2 at 18, 91) ("***For example***, the Accused Instrumentality identifies [the stated value.]" (emphasis added)). The contention does not limit itself to "identify[ing] whether or not a data block is duplicative" or "identify[ing] whether or not a data block consists of all zeroes," (*Id.*) but merely provides certain values as examples of the values within the accused instrumentality. *Fenner*, 2010 WL 786606 at *3. Realtime then provides specific screenshots that detail how the accused product works, identifying the values NetApp is arguing against. (Doc. 239-2 at 18–20, 91–94) ("Each block of data has a digital fingerprint, which is compared to all other fingerprints in the flexible volume. If two fingerprints are found to be the same, then a byte-to-byte comparison is performed on all bytes in the two blocks represented by the digital fingerprints"). Because the screenshots show other examples of how the instrumentality works, they are sufficient to provide notice to NetApp. *Finjan, Inc.*, 2016 WL 612907 at *8. For these reasons, Realtime provided sufficient notice of the six additional values.

Seventh, NetApp argues the expert expanded the theories on the '530 and '908 patents past the original infringement contention providing a theory for a "first data descriptor." (Doc.

9

No. 231 at 13–14.) Contrary to NetApp's assertions, additional descriptors were disclosed in Realtime's contentions, including "data descriptor indicating whether or not compression was applied and/or metadata" and "block size and/or medatdata." (Doc. No. 239 at 10–11) (citing 239-2 at 54–55; 106.) NetApp tries to limit Realtime's contentions to a specific portion which are given as an example. (Doc. No. 239-2 at 53, 105.) However, Realtime shows it specifically identified other descriptors and therefore placed NetApp on notice. (Doc. No. 239 at 10–11) (citing 239-2 at 54–55; 105–106.) Because Realtime identified these descriptors, NetApp was provided sufficient notice.

## CONCLUSION

The Court hereby **GRANTS** NetApp's Motion for Leave to File its Motion. (Doc. No. 232.) Concerning Defendant's motion to strike, the Court ultimately concludes that Realtime's infringement contentions comply with the requirements of the local patent rules. Thus, it is unnecessary for the Court to evaluate the factors that relate to whether an expert's opinion should be stricken as a sanction for violating the patent rules. Accordingly, Defendant's Motion to Strike Portions of Dr. Wesel's Report Regarding Infringement (Doc. No. 231.) is **DENIED**.

**So ORDERED and SIGNED this 26th day of October, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE