**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| REALTIME DATA LLC d/b/a IXO,<br><br>Plaintiff,<br><br>v.<br><br>RACKSPACE US, INC.; NETAPP, INC.;<br>AND SOLIDFIRE, LLC,<br><br>Defendants. | **Case No. 6:16-cv-961-RWS-JDL** |

**PROPOSED JOINT PRETRIAL ORDER**

Pursuant to the Amended Docket Control Order (Dkt. No. 241) and Rule 16 of the

Federal Rules of Civil Procedure, Plaintiff Realtime Data LLC d/b/a/ IXO ("Realtime") and

Defendants NetApp, Inc. and SolidFire, LLC (collectively "NetApp" or "Defendants") submit

this Proposed Joint Pretrial Order.

**I.      COUNSEL FOR THE PARTIES**

Attorneys for Plaintiff Realtime:

> Marc A. Fenster
> Reza Mirzaie
> Adam S. Hoffman
> Brian D. Ledahl
> C. Jay Chung
> James N. Pickens
> Paul Anthony Kroeger
> Philip X. Wang
> Christian W. Conkle
> **RUSS AUGUST & KABAT**
> 12424 Wilshire Boulevard, Suite 1200
> Los Angeles, CA 90025
> Phone: 310-826-7474
> Fax: 310-826-6991

Email: mfenster@raklaw.com
Email: rmirzaie@raklaw.com
Email: ahoffman@raklaw.com
Email: bledahl@raklaw.com
Email: jchung@raklaw.com
Email: jpickens@raklaw.com
Email: pkroeger@raklaw.com
Email: pwang@raklaw.com
Email: cconkle@raklaw.com

T. John Ward, Jr.
Texas State Bar No. 00794818
E-mail: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
E-mail: claire@wsfirm.com
Andrea Fair
State Bar No. 24078488
E-mail: Andrea@wsfirm.com
**Ward, Smith & Hill, PLLC**
PO Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

Attorneys for Defendants:

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, L.L.P.
303 S.  Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
melissa@gillamsmithlaw.com

Michael A. Jacobs (CA SBN 111664)
(admitted in the Eastern District of Texas)
Robert J.  Esposito (CA SBN 267031)
Christopher J. Wiener (CA SBN 280476)
(admitted in the Eastern District of Texas)
Shaelyn K. Dawson (CA SBN 288278)
(admitted *pro hac vice* Eastern District of Texas)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: (415) 268-7000

Facsimile: (415) 268-7522
mjacobs@mofo.com
resposito@mofo.com
cwiener@mofo.com
shaelyndawson@mofo.com

Colette Reiner Mayer (CA SBN 263630)
(admitted in the Eastern District of Texas)
Diek Van Nort (CA SBN 273823)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 813-5600
Facsimile:  (650) 494-0792
crmayer@mofo.com
dvanort@mofo.com

## II.     STATEMENT OF JURISDICTION

1.     This Court has subject-matter jurisdiction over the patent infringement claims

asserted by Realtime pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action arises under

the patent laws of the United States, including 35 U.S.C. § 1 *et seq*. Subject matter jurisdiction,

personal jurisdiction, and venue are not disputed in this case.

## III.     NATURE OF THE ACTION

### A.     Realtime's Statement Regarding Description of the Case

1.     In this patent-infringement action, Realtime alleges that Defendants NetApp and

Solidfire (collectively, "NetApp") have infringed and continue to infringe certain claims of U.S.

Patent Nos. 7,161,506 ("'506 patent"); 7,415,530 ("'530 patent"), 7,378,992 ("'992 patent"),

8,643,513 ("'513 patent"), 9,054,728 ("'728 patent"), and 9,116,908 ("'908 Patent")

(collectively, the "Patents-in-Suit" or "Asserted Patents"). Realtime has asserted the following

claims of the Patents-in-Suit (collectively, the "Asserted Claims"):

'506 patent claim 105;

'530 patent claims 1, 2, 12, 20;

'992 patent claim 48;

'513 patent claims 1, 14, 15;

'728 patent claims 1, 10, 17, 20, 24; and

'908 patent claims 1, 3.

2.     The accused products in this case are: (1) ONTAP products and services ("ONTAP"), including products and services that utilize ONTAP (e.g., versions 8.0.1 and forward, including, e.g., 8.1, 8.2, 8.3, 9.0, 9.1), including, e.g., NetApp's AFF (All Flash FAS) storage arrays (e.g., AFF A-Series, AFF A2/3/7xx, AFF8000 Series, AFF8080 EX Series, AFF8060 Series, AFF8040 Series, etc.), FAS hybrid (SSD + HDD) storage arrays (e.g., FAS9000 Series, FAS8200 Series, FAS8000 Series, FAS8080 Series, FAS8060 Series, FAS8040 Series, FAS8020 Series, FAS8000 Series, FAS6290 Series, FAS6280 Series, FAS6250 Series, FAS6240 Series, FAS6220 Series, FAS6210 Series, FAS6200 Series, FAS6080 Series, FAS6040 Series, FAS6000 Series, FAS3270 Series, FAS3250 Series, FAS3240 Series, FAS3220 Series, FAS3210 Series, FAS3200 Series, FAS3170 Series, FAS3160 Series, FAS3140 Series, FAS3100 Series, FAS3040 Series, FAS3000 Series, FAS2650 Series, FAS2620 Series, FAS2600 Series, FAS2554 Series, FAS2552 Series, FAS2520 Series, FAS2500 Series, FAS2240 Series, FAS2220 Series, FAS2200 Series, FAS2050 Series, FAS2040 Series, FAS2020 Series, FAS2000 Series, V6200, V6210, V6220, V6240, V6250, V6280, V6290, V6000, V6040, V6080, V3210, V3220, V3240,V3250, V3270, V3170, V3160, V3140 etc.), N-Series (re-branded FAS systems sold through IBM, including, e.g., N3150, N3220, N3240, N3300, N3400, N3700, N3600, N6040, N6060, N6070, N6210, N6240, N6250, N6270, N7600, N7700, N7800, N7900, N7950T), FlexPod (e.g., FlexPod Datacenter, FlexPod Express, FlexPod Select, etc.), ONTAP Select, FlexArray, NetApp Private Storage (NPS), and ONTAP Cloud systems, products and services;

4

(2) AltaVault products and services ("AltaVault"), including products and services that utilize AltaVault (e.g., versions 4.0, 4.1, 4.2) / SteelStore (e.g., versions 3.2, 3.3), including, e.g., Cloud-integrated Solutions (e.g., AVA-c4, AVA-c8, AVA-c16), physical appliances (e.g., AVA400, AVA800, SS3030), and virtual appliances (e.g., AVA-v2, AVA-v8, AVA-v16, AVA-v32); and (3) SolidFire products and services ("SolidFire"), including products and services that utilize SolidFire / Element OS (all versions), including, e.g., SF2405, SF3010, SF4805, SF6010, SF9010, SF9605, SF19210, Element X, Element X Utility, and SolidFire All-Flash products and services. Realtime seeks a reasonable royalty for Defendants' alleged infringement. Realtime seeks its costs, expenses, and attorneys' fees under 35 U.S.C. § 285, and any other relief the Court deems appropriate.

### B.     NetApp's Statement Regarding Description of the Case

1.     NetApp seeks a judgment that the Asserted Claims of the Patents-in-Suit are invalid and not infringed. NetApp also seeks to recover its costs and reasonable attorneys' fees from Realtime as provided in 35 U.S.C. § 285 or as otherwise allowed by law, together with any other relief the Court deems appropriate

2.     NetApp denies that any accused product (ONTAP, AltaVault, or SolidFire) directly or indirectly infringes any claim of any of the Asserted Patents, either literally, or under the doctrine of equivalents.

3.     NetApp also alleges that the asserted claims of the asserted patents do not recite a patentable invention, but merely obvious variations on what others had done before.  NetApp also alleges that the asserted claims of the Asserted Patents are invalid as anticipated. NetApp also alleges that the asserted claims of the Asserted Patents are invalid for failing to satisfy the enablement and written description requirements.

4.      NetApp denies that Realtime is entitled to damages, other monetary relief, or any other kind of relief.  NetApp denies that Realtime is entitled to pre-judgment or post-judgment interest. NetApp denies that this case is exceptional as to NetApp's actions and denies that Realtime is entitled to recover any of its attorneys' fees and costs from NetApp.

## IV.    CONTENTIONS OF THE PARTIES

### A.    Realtime's Statement of Its Contentions[1]

1.      This is a patent infringement case. Realtime is the owner of the Patents-in-Suit. As the owner, Realtime has the right to exclude others from using the inventions, and to enforce, sue and recover damages for past and future infringement of the patents. The accused products infringe the Patents-in-Suit, and Realtime is entitled to monetary compensation for this infringement.

2.      The inventions at issue in the Patents-in-Suit relate to improved, particularized systems of digital-data compression to address problems specific to the compression of "digital data." Defendants directly and/or indirectly infringes, either literally or under the Doctrine of Equivalents, each of the asserted claims by making, using, offering for sale, and/or selling within the United States, importing into the United States, contributing to infringement, and/or inducing third parties to use Defendants' products or services that meet or are used to meet the limitations of the Asserted Claims of the Patents-in-Suit.

3.      Realtime seeks both pre-verdict and post-verdict damages to compensate Realtime for Defendants' infringement, but in no event less than a reasonable royalty. Realtime

---

[1] By providing these contentions, Realtime does not concede that all of these issues are appropriate for trial, nor does Realtime waive any of its motions *in limine*.

sf-3844418

also seeks prejudgment and post-judgment interests and costs, including enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285.

###### B.  NetApp's Statement of Contentions

1.  By providing these contentions, NetApp does not concede that all of these issues are appropriate for trial.  Nor does NetApp waive any of its motions *in limine*.

2.  NetApp contends that Realtime will be unable to prove that NetApp directly or indirectly infringed any of the Patents-in-Suit, either literally or under the doctrine of equivalents, as set forth below. NetApp contends that it has not infringed, and does not infringe, directly or indirectly, any of the Patents-in-Suit, either literally or under the doctrine of equivalents, for at least the reasons set forth in the rebuttal expert of Dr. James Storer.

3.  NetApp contends that the Accused Products (ONTAP, AltaVault, and/or SolidFire) do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '530 patent.

4.  NetApp contends that Realtime is barred by ensnarement from asserting the doctrine of equivalents in connection with the asserted claims of the '530 patent.

5.  NetApp contends that, because consumers do not directly infringe the '530 patent, NetApp does not induce any infringement of the '530 patent or contribute to any infringement of the '530 patent.

6.  NetApp contends that the asserted claims of the '530 patent do not recite a patentable invention, but merely obvious variations on what had been done before.  The asserted claims are therefore invalid for obviousness under 35 U.S.C. § 103.

7.      NetApp contends that the asserted claims of the '530 patent fail to satisfy the written description requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

8.      NetApp contends that the asserted claims of the '530 patent fail to satisfy the enablement requirement.  The asserted claims are therefore invalid for under 35 U.S.C. § 112.

9.      NetApp contends that, because it has not infringed the '530 patent, and because the asserted claims of that patent are invalid, NetApp is not liable for any damages to Realtime.

10.      NetApp contends that the Accused Products (ONTAP, AltaVault, and/or SolidFire) do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '908 patent.

11.      NetApp contends that, because consumers do not directly infringe the '908 patent, NetApp does not induce any infringement of the '908 patent or contribute to any infringement of the '908 patent.

12.      NetApp contends that the asserted claims of the '908 patent do not recite a patentable invention, but merely obvious variations on what had been done before.  The asserted claims are therefore invalid for obviousness under 35 U.S.C. § 103.

13.      NetApp contends that the asserted claims of the '908 patent fail to satisfy the written description requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

14.      NetApp contends that the asserted claims of the '908 patent fail to satisfy the enablement requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

15.      NetApp contends that, because it has not infringed the '908 patent, and because the asserted claims of that patent are invalid, NetApp is not liable for any damages to Realtime.

16.     NetApp contends that the '513 Patent is not entitled to December 11, 1998, as a priority date.

17.     NetApp contends that the Accused Products (ONTAP, AltaVault, and/or SolidFire) do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '728 patent.

18.     NetApp contends that Realtime is barred by ensnarement from asserting the doctrine of equivalents in connection with the asserted claims of the '728 patent.

19.     NetApp contends that, because consumers do not directly infringe the '728 patent, NetApp does not induce any infringement of the '728 patent or contribute to any infringement of the '728 patent.

20.     NetApp contends that the asserted claims of the '728 patent do not recite a patentable invention, but merely obvious variations on what had been done before.  The asserted claims are therefore invalid for obviousness under 35 U.S.C. § 103.

21.     NetApp contends that the asserted claims of the '728 patent do not recite a patentable invention, but was anticipated by what had been done before.  The asserted claims are therefore invalid as anticipated under 35 U.S.C. § 102.

22.     NetApp contends that the asserted claims of the '728 patent fail to satisfy the written description requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

23.     NetApp contends that the asserted claims of the '728 patent fail to satisfy the enablement requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

24.     NetApp contends that, because it has not infringed the '728 patent, and because the asserted claims of that patent are invalid, NetApp is not liable for any damages to Realtime.

9

25.     NetApp contends that the Accused Products (ONTAP, AltaVault, and/or SolidFire) do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '506 patent.

26.     NetApp contends that Realtime is barred by ensnarement from asserting the doctrine of equivalents in connection with the asserted claims of the '506 patent.

27.     NetApp contends that, because consumers do not directly infringe the '506 patent, NetApp does not induce any infringement of the '506 patent or contribute to any infringement of the '506 patent.

28.     NetApp contends that the asserted claims of the '506 patent do not recite a patentable invention, but merely obvious variations on what had been done before.  The asserted claims are therefore invalid for obviousness under 35 U.S.C. § 103.

29.     NetApp contends that the asserted claims of the '506 patent do not recite a patentable invention, but was anticipated by what had been done before.  The asserted claims are therefore invalid as anticipated under 35 U.S.C. § 102.

30.     NetApp contends that the asserted claims of the '506 patent fail to satisfy the written description requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

31.     NetApp contends that the asserted claims of the '506 patent fail to satisfy the enablement requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

32.     NetApp contends that, because it has not infringed the '506 patent, and because the asserted claims of that patent are invalid, NetApp is not liable for any damages to Realtime.

33.     NetApp contends that the Accused Products (ONTAP, AltaVault, and/or SolidFire) do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '513 patent.

34.     NetApp contends that Realtime is barred by ensnarement from asserting the doctrine of equivalents in connection the asserted claims of the '513 patent.

35.     NetApp contends that, because consumers do not directly infringe the '513 patent, NetApp does not induce any infringement of the '513 patent or contribute to any infringement of the '513 patent.

36.     NetApp contends that the asserted claims of the '513 patent do not recite a patentable invention, but merely obvious variations on what had been done before.  The asserted claims are therefore invalid for obviousness under 35 U.S.C. § 103.

37.     NetApp contends that the asserted claims of the '513 patent do not recite a patentable invention, but was anticipated by what had been done before.  The asserted claims are therefore invalid as anticipated under 35 U.S.C. § 102.

38.     NetApp contends that the asserted claims of the '513 patent fail to satisfy the written description requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

39.     NetApp contends that the asserted claims of the '513 patent fail to satisfy the enablement requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

40.     NetApp contends that, because it has not infringed the '513 patent, and because the asserted claims of that patent are invalid, NetApp is not liable for any damages to Realtime.

11

41.     NetApp contends that the Accused Products (ONTAP, AltaVault, and/or SolidFire) do not infringe, either directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '992 patent.

42.     NetApp contends that Realtime is barred by ensnarement from asserting the doctrine of equivalents in connection with the asserted claims of the '992 patent.

43.     NetApp contends that, because consumers do not directly infringe the '992 patent, NetApp does not induce any infringement of the '992 patent or contribute to any infringement of the '992 patent.

44.     NetApp contends that the asserted claims of the '992 patent do not recite a patentable invention, but merely obvious variations on what had been done before.  The asserted claims are therefore invalid for obviousness under 35 U.S.C. § 103.

45.     NetApp contends that the asserted claims of the '992 patent do not recite a patentable invention, but was anticipated by what had been done before.  The asserted claims are therefore invalid as anticipated under 35 U.S.C. § 102.

46.     NetApp contends that the asserted claims of the '992 patent fail to satisfy the written description requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

47.     NetApp contends that the asserted claims of the '992 patent fail to satisfy the enablement requirement.  The asserted claims are therefore invalid under 35 U.S.C. § 112.

48.     NetApp contends that, because it has not infringed the '992 patent, and because the asserted claims of that patent are invalid, NetApp is not liable for any damages or reasonably royalty to Realtime.

sf-3844418

49.     NetApp denies that Realtime is entitled to its costs and expenses, or its attorneys' fees.

50.     NetApp denies that Realtime is entitled to any enhanced damages under 35 U.S.C. § 285.

51.     NetApp contends Realtime's assertion of the Asserted Patents is exceptional and that NetApp is entitled to recover reasonable attorneys' fees and costs (and consultant fees and costs) pursuant to 35 U.S.C. § 285.

## V.     STIPULATIONS AND UNCONTESTED FACTS

### A.     Statement of Uncontested Facts

### a.     Jurisdiction:

1.     This Court has subject matter jurisdiction over this case.

2.     This Court has personal jurisdiction over the parties.

3.     Realtime filed its Complaint against NetApp on June 29, 2016, styled *Realtime Data LLC v. NetApp, Inc.* Tyler Division, Civil Action No. 6:16-cv-961-RWS-JDL.

### b.     Parties:

1.     Realtime Data, LLC d/b/a IXO is a New York limited liability company.

2.     NetApp, Inc. is a Delaware corporation headquartered in Sunnyvale, California.

3.     SolidFire, LLC is a Delaware limited liability company based in Boulder, Colorado.

4.     Since February 2, 2016, NetApp has owned 100% of the interest in SolidFire.

### c.     Patents-In-Suit:

1.     Realtime is the owner of the Patents-in-Suit.

2.     The '506 patent has a priority date of October 29, 2001.

13

3.      The U.S. Patent application that led to the '506 patent was filed September 22, 2003, and the patent issued on January 9, 2007.

4.      The '506 Patent is entitled "Systems and Methods for Data Compression Such as Content Dependent Data Compression."

5.      Claim 105 of the '506 patent is at issue and asserted in this action.

6.      The named inventor of the '506 patent is James J. Fallon.

7.      The '506 patent expires on December 11, 2018.

8.      The '513 patent has a priority date of October 29, 2001.

9.      The U.S. patent application that led to the '513 patent was filed June 6, 2011, and the patent issued on February 4, 2014.

10.     The '513 patent is entitled "Data compression systems and methods."

11.     Claims 1, 4, 15 of the '513 patent are at issue and asserted in this action.

12.     The named inventor of the '513 patent is James J. Fallon.

13.     The '513 patent expires on November 2, 2019.

14.     The '530 patent has a priority date of March 11, 1999.

15.     The U.S. patent application that led to the '530 patent was filed October 26, 2006, and the patent issued on August 19, 2008.

16.     The '530 patent is entitled "System and methods for accelerated data storage and retrieval."

17.     Claims 1, 2, 12, and 20 of the '530 patent are at issue and asserted in this action.

18.     The named inventor of the '530 patent is James J. Fallon.

19.     The '530 patent expires on March 11, 2019.

20.     The '908 patent has a priority date of March 11, 1999.

14

21.     The U.S. patent application that led to the '908 patent was filed June 12, 2014, and the patent issued on August 25, 2015.

22.     The '908 patent is entitled "System and methods for accelerated data storage and retrieval."

23.     Claims 1 and 3 of the '908 patent are at issue and asserted in this action.

24.     The named inventor of the '908 patent is James J. Fallon.

25.     The '908 patent expires on March 11, 2019.

26.     The '992 patent has a priority date of October 29, 2001.

27.     The U.S. patent application that led to the '992 patent was filed April 8, 2006, and the patent issued on May 27, 2008.

28.     The '992 patent is entitled "Content Independent Data Compression Method And System."

29.     Claim 48 of the '992 patent is at issue and asserted in this action.

30.     The named inventor of the '992 patent is James J. Fallon.

31.     The '992 patent expires on December 11, 2018.

32.     The '728 patent has a priority date of October 29, 2001.

33.     The U.S. patent application that led to the '728 patent was filed September 24, 2014, and the patent issued on June 9, 2015.

34.     The '728 patent is entitled "Data Compression System and Methods."

35.     Claims 1, 10, 17, 20, and 24 of the '728 patent are at issue and asserted in this action.

36.     The named inventor of the '728 patent is James J. Fallon.

37.     The '728 patent expires on December 11, 2018.

15

> d. **Person of Ordinary Skill in the Art:**

1. **Realtime's Proposal:** The person of ordinary skill in the art of the patented technology at the time of the invention of the asserted patents would have a bachelor's degree in electrical engineering, computer engineering, computer science, or the equivalent or 2-3 years of work experience with data compression, storage, retrieval, processing, and transmission, or the equivalent.

2. **NetApp Proposal:** A person of ordinary skill in the art for these patents would hold a Bachelor of Science (B.S.) degree in Computer Science (CS) or Computer Engineering (CE) with at least two years of course work in the area of programming and data compression. Such course work would provide exposure to topics such as programming languages, data structures, computer architecture, and data compression. A person who did not satisfy the identified education level could still qualify as a person of ordinary skill if she had two years of relevant work experience.

> e. **Accused Products:**

1. The accused products in this case are: (1) ONTAP products and services ("ONTAP"), including products and services that utilize ONTAP (e.g., versions 8.0.1 and forward, including, e.g., 8.1, 8.2, 8.3, 9.0, 9.1), including, e.g., NetApp's AFF (All Flash FAS) storage arrays (e.g., AFF A-Series, AFF A2/3/7xx, AFF8000 Series, AFF8080 EX Series, AFF8060 Series, AFF8040 Series, etc.), FAS hybrid (SSD + HDD) storage arrays (e.g., FAS9000 Series, FAS8200 Series, FAS8000 Series, FAS8080 Series, FAS8060 Series, FAS8040 Series, FAS8020 Series, FAS8000 Series, FAS6290 Series, FAS6280 Series, FAS6250 Series, FAS6240 Series, FAS6220 Series, FAS6210 Series, FAS6200 Series, FAS6080 Series, FAS6040 Series, FAS6000 Series, FAS3270 Series, FAS3250 Series, FAS3240 Series, FAS3220 Series,

16

FAS3210 Series, FAS3200 Series, FAS3170 Series, FAS3160 Series, FAS3140 Series, FAS3100 Series, FAS3040 Series, FAS3000 Series, FAS2650 Series, FAS2620 Series, FAS2600 Series, FAS2554 Series, FAS2552 Series, FAS2520 Series, FAS2500 Series, FAS2240 Series, FAS2220 Series, FAS2200 Series, FAS2050 Series, FAS2040 Series, FAS2020 Series, FAS2000 Series, V6200, V6210, V6220, V6240, V6250, V6280, V6290, V6000, V6040, V6080, V3210, V3220, V3240, V3250, V3270, V3170, V3160, V3140 etc.), N-Series (re-branded FAS systems sold through IBM, including, e.g., N3150, N3220, N3240, N3300, N3400, N3700, N3600, N6040, N6060, N6070, N6210, N6240, N6250, N6270, N7600, N7700, N7800, N7900, N7950T), FlexPod (e.g., FlexPod Datacenter, FlexPod Express, FlexPod Select, etc.), ONTAP Select, FlexArray, NetApp Private Storage (NPS), and ONTAP Cloud systems, products and services; (2) AltaVault products and services ("AltaVault"), including products and services that utilize AltaVault (e.g., versions 4.0, 4.1, 4.2) / SteelStore (e.g., versions 3.2, 3.3), including, e.g., Cloud-integrated Solutions (e.g., AVA-c4, AVA-c8, AVA-c16), physical appliances (e.g., AVA400, AVA800, SS3030), and virtual appliances (e.g., AVA-v2, AVA-v8, AVA-v16, AVA-v32); and (3) SolidFire products and services ("SolidFire"), including products and services that utilize SolidFire / Element OS (all versions), including, e.g., SF2405, SF3010, SF4805, SF6010, SF9010, SF9605, SF19210, Element X, Element X Utility, and SolidFire All-Flash products and services.

## VI.    CONTESTED ISSUES OF FACT AND LAW

1.      The parties identify the following issues that remain to be litigated. To the extent any issue of law discussed below is deemed to be an issue of fact, or any issue of fact deemed to be an issue of law, it is incorporated into the appropriate section. The parties reserve the right to

identify additional factual or legal issues that may arise, including those issues raised in any motions *in limine*.

**A.      Realtime's Statement Regarding Issues to be Decided by the Jury**

**Infringement**

1.      Whether Realtime has shown by a preponderance of the evidence that Defendants have directly or indirectly infringed and are directly or indirectly infringing any of the Asserted Claims of the Patents-in-Suit, literally, or under the doctrine of equivalents.

**Invalidity**

2.      Whether Defendants have shown by clear and convincing evidence the invalidity of any of the Asserted Claims.

**Patent Damages/Remedies**

3.      Whether Realtime is entitled to a reasonable royalty under 35 U.S.C. section 284 for Defendants' infringement of the Patents-in-Suit if proven, and the total amount of such royalty / damages.

**B.      NetApp's Statement Regarding Issues to be Decided by the Jury**

**a.      Invalidity of the Asserted Patent Claims**

1.      Whether the earliest priority date that the '506, '728, '513, and '992 patents are entitled to is October 29, 2001.

2.      Whether the asserted claims of the Patents-in-Suit are invalid for obviousness under 35 U.S.C. § 103.

3.      Whether the asserted claims of the '506, '728, '513, and '992 patents are invalid as anticipated under 35 U.S.C. § 102.

4.      Whether the asserted claims of the Patents-in-Suit are invalid due to written description and/or lack of enablement under 35 U.S.C. § 112.[2]

5.      Whether there exist objective indicia or secondary considerations of non-obviousness, including but not limited to, any long-felt need that has been resolved by the subject matter embodied by the asserted claims of the Patents-in-Suit; any failed attempts of others that reflect any non-obviousness of the asserted claims of the Patents-in-Suit; any skepticism on the part of those skilled in the art as concerns the subject matter of the asserted claims of the Patents-in-Suit; any licensing of the subject matter of the asserted claims of the Patents-in-Suit that may be reflective of non-obviousness of these patent claims; any commercial success; any recognition in the industry for the subject matter of the asserted claims of the Patents-in-Suit; any acquiescence to the validity of the asserted claims of the Patents-in-Suit; any copying that could support a claim of non-obviousness of the asserted claims of the Patents-in-Suit; or any unexpected results that demonstrate non-obviousness.

### b.      Infringement and Noninfringement

1.      Whether Realtime has shown by a preponderance of the evidence that Defendants have directly or indirectly infringed and are directly or indirectly infringing any of the Asserted Claims of the Patents-in-Suit, literally, or under the doctrine of equivalents.

2.      Whether the commercial manufacture, use, sale, offer for sale, and/or importation of any accused product would directly infringe the asserted claims of the Patents-in-Suit, either literally or under the doctrine of equivalents.

---

[2] To the extent that whether or not a patent is enabled is a question of law, it is NetApp's position that that issue should be reserved for the Court.

sf-3844418

3.      Whether Defendants would induce infringement of, or otherwise indirectly infringe the asserted claims of the Patents-in-Suit through the commercial manufacture, use, sale, offer for sale, and/or importation of the accused products.

**c.      Patent Damages/Remedies**

1.      Whether Realtime is entitled to a "reasonable royalty" under 35 U.S.C. § 284 for Defendants' infringement of the Patents-in-Suit if proven, and the total amount of such royalty.

2.      Whether and how much damages, costs, expenses, prejudgment and post-judgment interest, damages under 35 U.S.C. § 284, attorneys' fees under 35 U.S.C. § 285, and any other relief to award to Realtime.

3.      Whether and how much attorneys' fees under 35 U.S.C. § 285, and any other relief, to award to NetApp.

**d.      Date Damages Begin:**

1.      **NetApp's Position**

4.      For the '513 patent, the '908 patent, the '728 patent, and the '530 patent, NetApp contends that the appropriate start date for damages is the date of service of the summons and complaint, July 1, 2016, due to Realtime's failure to mark. Realtime disputes this contention.  If 35 U.S.C. § 287 is not applied, the appropriate start dates for damages would be as follows:

a.  ONTAP

i.      '513 Patent: February 4, 2014 (issue date of the patent)

ii.     '908 Patent: August 25, 2015 (issue date of the patent)

iii.    '728 Patent: June 9, 2015 (issue date of the patent)

iv.     '530 patent: September 3, 2010 (date of first sale)

20

     v.    '506 Patent: March 1, 2015 (date of introduction of zero-block

          deduplication functionality)

     vi.   '992 Patent: March 1, 2015 (date of introduction of zero-block

          deduplication functionality)

b.  AltaVault

     i.    '513 Patent: November 2014 (date of NetApp acquisition of AltaVault)

     ii.   '908 Patent: August 25, 2015 (issue date of the patent)

     iii.  '728 Patent: June 9, 2015 (issue date of the patent)

     iv.  '530 patent: November 2014 (date of NetApp acquisition of AltaVault)

     v.    '506 Patent: November 2014 (date of NetApp acquisition of AltaVault)

     vi.   '992 Patent: November 2014 (date of NetApp acquisition of AltaVault)

c.  SolidFire

     i.    '513 Patent: February 4, 2014 (issue date of the patent)

     ii.   '908 Patent: August 25, 2015 (issue date of the patent)

     iii.  '728 Patent: June 9, 2015 (issue date of the patent)

     iv.  '530 patent: November 2012 (date of first sale)

     v.    '506 Patent: January 8, 2014 (issue date of the asserted claim)

     vi.   '992 Patent: January 8, 2014 (issue date of the asserted claim)

21

### C.     Parties' Statement Regarding Issues to be Decided by the Court

1.     The parties contend that all equitable issues require determination by the Court,

should not be submitted to the jury, and the jury should not be advised of the issues or evidence

relating solely thereto.  Accordingly, the following issues require determination by the Court:

2.     Ensnarement: Whether the prior art precludes a finding of infringement under the

doctrine of equivalents.[3]

3.     Whether and how much costs, expenses, prejudgment and post-judgment interest,

attorneys' fees under 35 U.S.C. § 285, and any other relief the Court may deem appropriate and

just under the circumstances to award to Realtime, and whether Realtime shall be required to pay

NetApp's costs of this action, including all disbursements.

## VII.   LENGTH OF TRIAL

1.     <u>Realtime's Proposal:</u> Each side is allotted 30 minutes for voir dire, 45 minutes for

opening statement, 60 minutes for closing argument, and 9 hours for direct and cross

examinations.

2.     <u>NetApp's Proposal:</u> NetApp is allotted 30 minutes for voir dire, 45 minutes for

opening statement, 60 minutes for closing argument, and 13 hours for direct and cross

---

[3] **NetApp's Position:** Although "ensnarement" is a question of law, a court may obtain an Advisory Verdict on this question necessitating inclusion of Instruction 3.7. In particular, the Federal Circuit has held that the question of whether the scope of a claim under the doctrine of equivalents ensnares the prior art is "ultimately . . . a question of law for the court, not the jury, to decide," but "[i]f a district court believes that an advisory verdict would be helpful, and that a 'hypothetical' claim construct would not unduly confuse the jury as to equivalence and validity, then one may be obtained under Federal Rule of Civil Procedure 39(c)." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1324 (Fed. Cir. 2009).
**Realtime's Position**: NetApp correctly recognizes that ensnarement is a question of law. As such, it should not be submitted to the jury. Asking the jury to render an advisory verdict on ensnarement would be unusual and conflict with this Court's practices. *See, e.g., Tyco Healthcare Group LP, et al. v. E-Z-EM, Inc., et al.*, Civ. Action No. 2:07-CV-262 (TJW), Dkt No. 670 at 1 (E.D. Tex. June 8, 2010) ("Defendants are nonetheless forbidden from introducing evidence or argument relating to the ensnarement defense in front of the jury."). Ensnarement would also confuse the jury and unfairly prejudice Realtime by allowing NetApp to discuss two prior art references—Cane and Williams—that were specifically struck by this Court (Dkt. No. 230). Realtime intends to file a motion *in limine* containing further authorities related to this issue.

22

examinations; Realtime is allotted 30 minutes for voir dire, 45 minutes for opening statement, 60 minutes for closing argument, and 9 hours for direct and cross examinations.

## VIII.   TRIAL MANAGEMENT PROCEDURES

### A.   Stipulation for Trial Management Procedures

1.       With respect to opening statements, by no later than 10:00 a.m. Central Time on the day before the opening statements, the parties shall exchange by email lists of (a) any non-pre-admitted exhibits for which there are pending objections remaining and (b) copies of any demonstrative exhibits that they intend to use in their respective opening statements. By no later than 3:00 p.m. Central Time that same day, the party receiving the exhibit list shall inform the party identifying the exhibits of any objections to such exhibits. By no later than 5:00 p.m. Central Time that same day, the parties shall meet and confer to resolve any objections.

2.       A party need not do deposition designations for a witness who is designated as a "will call" "live" witness in the opposing party's trial witness list.  If a party decides not to call a witness live who had been previously designated as a "will call" witness, then the opposing party will have the opportunity to do deposition designations. In such a scenario, rebuttal designations, objections to deposition designations, and objection to rebuttal deposition designations would be allowed.  A party will notify the opposing party of any such change from "will call" designation no later than 7 days before the witness was planned to testify at trial.

3.       The following procedures shall apply to the identification of witnesses, exhibits, and demonstrative exhibits for a party's direct examination prior to the witness's testimony and/or use of exhibits:

   a.   Each party shall provide notice via electronic mail no later than 7:00 p.m. Central Time each day of all witnesses intended to be presented live or by deposition

23

two calendar days later at trial. In other words, if a witness will testify live or by deposition on a Monday, the witness must be identified by 7:00 p.m. on the previous Saturday. Such notice shall indicate the intended order of call and whether the witness will be presented live or by deposition.

b.   By no later than 7:00 p.m. Central Time the day before a witness is expected to first testify, the offering party will provide to the other party via electronic mail a list of any exhibits to be used with each witnesses specified in paragraph 3(a) of this section (excluding exhibits used solely for the purpose of impeachment or cross examination) and final hard and electronic copies of all demonstrative exhibits to be used with such witnesses (subject only to addressing evidentiary objections or rulings) and, if the witness will testify by deposition, the portions of the deposition the offering party intends to play (by page and line number).

c.   By no later than 8:30 p.m. Central Time the day before a witness is expected to first testify, the party receiving the exhibits, including demonstrative exhibits, shall inform the offering party of any objections and, if a witness is to be called by deposition, the receiving party's deposition counter-designations (by page and line number);

d.   By no later than 9:30 p.m. Central Time on the day the disclosures in paragraphs 2(a)-(c) of this section are received (or such later time as agreed upon by the parties), the parties shall meet and confer to resolve any objections;

e.   The parties shall then raise any continuing disputes as to exhibits to be used with witnesses or the witnesses themselves with the Court as appropriate before each trial day commences, or at the Court's direction or convenience; and

24

f.  The parties will exchange demonstrative exhibits for use in closing arguments that were not previously exchanged among the parties and used at trial at least one hour prior to any party's closing arguments.

4.     The notice provisions of the immediately preceding paragraphs 3(a)-(f) shall not apply to illustrative exhibits created in the courtroom during testimony or to the enlargement, highlighting, ballooning, excerption, etc. of trial exhibits, demonstrative exhibits, illustrative exhibits, or testimony, provided that such enlargement, highlighting, ballooning, excerption, etc. is performed in the courtroom, so long as the underlying exhibit is pre-admitted or the party has identified its intention to use the exhibit according to paragraph 3 of this section. This exception shall only be used for the purpose of emphasis and callouts may not contain witness or attorney comments or annotations in the exhibit or callout.

5.     The parties shall make good-faith efforts to resolve all objections over the use of identified witnesses, testimony, exhibits, and demonstrative exhibits prior to the trial day of their intended use/testimony by participating in a meet and confer following the identification of and objections to witnesses, testimony, exhibits, and demonstrative exhibits each day. Materials to be used solely for impeachment of a witness called by the other party need not be identified in advance.

6.     For allocating time between the parties for witnesses presented by deposition, witnesses presented by video will be divided by the actual time for designations and counter-designations by each party. For witnesses presented by read deposition testimony, the allocation of trial time will be determined by the ratio of deposition testimony lines designated by each party to the total number of lines read by that witness.

7.     If a party presents a witness by deposition at trial during its direct examination, the

party offering the testimony will play or read both the designated portion of the testimony and the opposing party's counter-designations, omitting (as agreed upon in advance by the parties) objections or colloquy where appropriate. The time for such designations shall be allocated to each party accordingly (time for counter-designations charged to the opposing party).

8.     The listing of a deposition designation or discovery response does not constitute an admission as to the admissibility of the testimony or discovery response nor is it a waiver of any applicable objection.

9.     Legible copies of United States and foreign patents, patent applications, and publications thereof, and the contents of associated file histories, are presumed authentic and may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

10.     The parties each reserve the right to offer into evidence and introduce any exhibit designated by any other party, even if not offered into evidence or introduced by the designating party. All objections to such exhibits are preserved. That an exhibit appears on a party's exhibit list is not an admission that the exhibit is admissible if introduced by any other party. Any exhibit, once admitted into evidence, may be used equally by any party subject to any limitations as to its admission into evidence and subject to the Court's rulings on motions *in limine* that may limit the purpose for which an exhibit may be used.

11.     The parties shall deliver ten (10) juror notebooks to the Court no later than Friday, January 19, 2017, at 2:00 p.m. The notebooks should contain the following: 1) a ruled 3-holed punched notepad; 2) copies of patent(s) in suit; 3) a claim construction chart with construed terms and the actual adopted constructions in a side-by-side chart format; and 4) a ballpoint pen (that does not click).

sf-3844418

12.     On the morning of each trial day, the party who is calling a witness will deliver specific Witness pages to the clerk, which include, for each witness, a sheet of paper with the witness's name only, a head and shoulders photo of each witness, and ruled lines for juror notes.

## IX.     LIST OF WITNESSES

1.     Realtime's witness list is attached as Exhibit A.

2.     NetApp's witness list is attached as Exhibit B.

## X.     DEPOSITION DESIGNATIONS

1.     Realtime's deposition designations are attached as Exhibit C.

2.     NetApp's deposition designations are attached as Exhibit D.

## XI.     LIST OF EXHIBITS

1.     Realtime's exhibit list is attached as Exhibit E.

2.     NetApp's exhibit list is attached as Exhibit F.

## XII.     PROPOSED JURY INSTRUCTIONS AND VERDICT FORMS

1.     Attached as Exhibit G is a copy of the parties' proposed preliminary jury instructions.

2.     Attached as Exhibit H is a copy of Realtime's proposed verdict form.

3.     Attached as Exhibit I is a copy of NetApp's proposed verdict form.

## XIII.   LIST OF PENDING MOTIONS

1.     There are no motions pending.

## XIV.   CERTIFICATIONS

1.     The undersigned counsel for each of the parties to this action does hereby certify and acknowledge the following:

sf-3844418

2.      Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

3.      Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with.

4.      Except as otherwise agreed or ordered, counsel for each party will provide the following certification when their respective exhibit list is filed.   Each exhibit in the List of Exhibits: (a) is in existence, (b) will be numbered, and (c) has been disclosed and shown to opposing counsel.

Dated:  December 4, 2017                     Respectfully submitted,


                                             By: /s/  C. Jay Chung
                                             Marc A. Fenster (CA SBN 181067)
                                             Email: mfenster@raklaw.com
                                             Brian D. Ledahl (CA SBN 186579)
                                             Email: bledahl@raklaw.com
                                             Reza Mirzaie (CA SBN 246953)
                                             Email: rmirzaie@raklaw.com
                                             Paul Kroeger (CA SBN 229074)
                                             Email: pkroeger@raklaw.com
                                             C. Jay Chung (CA SBN 252794)
                                             Email: jchung@raklaw.com
                                             Philip X. Wang (CA SBN 262239)
                                             Email: pwang@raklaw.com
                                             James N. Pickens (CA SBN 307474)
                                             Email: jpickens@raklaw.com
                                             Christian Conkle (CA SB No. 306374)
                                             Email: cconkle@raklaw.com
                                             **RUSS AUGUST & KABAT**
                                             12424 Wilshire Boulevard, 12th Floor
                                             Los Angeles, CA 90025
                                             Telephone: 310/826-7474
                                             Facsimile 310/826-6991

                                             T. John Ward, Jr.

Texas State Bar No. 00794818
E-mail: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
E-mail: claire@wsfirm.com
Andrea Fair
State Bar No. 24078488
E-mail: Andrea@wsfirm.com
**Ward, Smith & Hill, PLLC**
PO Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

**Attorneys for Plaintiff**
**REALTIME DATA LLC d/b/a IXO**

By: /s/ Robert J. Esposito
Melissa R. Smith
State Bar No. 24001351
Bobby Lamb
State Bar No. 24080997
GILLAM & SMITH, L.L.P.
303 S. Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
melissa@gillamsmithlaw.com

Michael A. Jacobs (CA SBN 111664)
(admitted in the Eastern District of Texas)
Robert J. Esposito (CA SBN 267031)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522
mjacobs@mofo.com
resposito@mofo.com

Colette Reiner Mayer (CA SBN 263630)
(admitted in the Eastern District of Texas)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 813-5600

29

Facsimile:  (650) 494-0792
CRMayer@mofo.com

**Attorneys for NetApp**

**NETAPP, INC. and SOLIDFIRE, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served on all counsel of record via electronic service on December 4, 2017.


/s/ C. Jay Chung                         

sf-3844418